UNITED STATES DISTRICT COURT for the
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

JACK ARGILA, in his fiduciary capacity as a Trustee for the     :
POINTERS, CLEANERS & CAULKERS WELFARE,     :
PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT     :    **SECOND**
APPRENTICE TRAINING FUND, the LABOR     :    **AMENDED**
MANAGEMENT FUND, and the PROMOTION FUND;     :    **COMPLAINT**
and as President of the BRICKLAYERS AND ALLIED     :
CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U.,     :    22-CV-3324
AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND     :
TROWEL TRADES INTERNATIONAL PENSION FUND and     :
the INTERNATIONAL MASONRY INSTITUTE,     :    (Merkl, M.J.)
    :
                   Plaintiffs,     :
    :
        -against-     :
    :
S&N BUILDERS, INC.; SAKANDER RAJA; DOE GENERAL     :
CONTRACTOR; ENDURANCE ASSURANCE CORP.;     :
NORTH AMERICAN SPECIALTY INSURANCE COMPANY;     :
and QBE INSURANCE CORPORATION,     :
    :
                   Defendants.     :

-----------------------------------------------------------------------------X

Plaintiffs, by their attorneys, HOLM & O'HARA LLP ("H&O"), as and for their

Second Amended Complaint against the Defendants, allege the following:

## NATURE OF ACTION

1.     This is an action arising under the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 141, et seq., the New York Lien Law, N.Y. Lien L. § 70, et seq., and

common law.

## JURISDICTION AND VENUE

2.     Jurisdiction over the causes of action alleged herein is conferred upon this

Court by 28 U.S.C. §§ 1331 and 1337; by 29 U.S.C. §§ 185(c), 1109(a), 1132(a)(2), 1132(a)(3),

1132(d), 1132(e)(1), 1132(f), and 1145.

3.    Venue is properly placed in the Eastern District of New York under 29 U.S.C. §§ 185(a) and 1132(e)(2) in that the subject plans are administered and maintain their principal office in the County of Queens, New York. The Defendants' principal place of business is located in the County of Westchester, New York; service of process may be made on the Defendant in any other district in which they may be found, pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4.    Plaintiffs Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds and Bricklayers Joint Apprentice Training Funds ("PCC Funds") are jointly trusteed multiemployer plans established pursuant to a collective bargaining agreement and by trust indentures, in accordance with 29 U.S.C. §§ 186(c)(5), (c)(6), and (c)(9). The PCC Funds are "employee benefit plans" within the meaning of 29 U.S.C. §§ 1002(2), 1002(3), and 1132(d)(l) and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The PCC Funds are the administrator of all of the ERISA Plans and the Non-ERISA Plans (collectively the "Plans"). Under the collective bargaining agreements, signatory employers, including the Defendant, are required to remit the required contributions, as well as summaries of their payroll records. The PCC Funds are authorized to maintain suit as an independent legal entity under 29 U.S.C. § 1132(d)(l). The PCC Funds are administered and maintain an office located at 66-05 Woodhaven Boulevard, Rego Park, New York 11374.

5.    In addition, the PCC Funds collect assessments from certain employees covered by the collective bargaining agreements who authorize their employers to deduct from their wages union dues and assessments due to the union ("Union Amounts").

6. The PCC Funds also collect, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: the Labor Management Relations Fund and the Promotion Fund ("non-ERISA Plans"). Together, the Union Amounts and the amounts owed to the non-ERISA Plans are referred to as the "Non-ERISA contributions." The contributions to the ERISA Plans and the non-ERISA contributions are collectively referred to as "Contributions."

7. Plaintiff Bricklayers & Trowel Trades International Pension Fund ("IPF") by its employer and employee representatives and Trustees, Timothy Driscoll, Robert Arnold, Carlos Aquin, Jeremiah Sullivan, Jr., Gerard Scarano, Gerald O'Malley, Henry Kramer, Gregory Hess, Matthew Aquiline, William McConnell, Robert Hoover, John Trendell, Anthony Marra (hereinafter the "International IPF Trustees") is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IPF is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), 1002(3), and 1132(d)(l), and a multiemployer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IPF, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the participants and beneficiaries of the IPF. The IPF is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

8. The IPF is also authorized to effect collections on behalf of the plaintiff International Masonry Institute ("IMI") pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

9. Plaintiff IMI, by its employer and employee representatives and Trustees, Jim Allen, Matthew Aquiline, Carlos Aquin, Jack Argila, Robert Arnold, John Capo, Ted Champ, Tommy Corner, Timothy Driscoll, Gregory Hess, Robert Hoover, Brian Jennewein, David Jackson, Fred Kinateder, Jr., Ken Kudela, Chuck Kukawka, Dan Kwiatkowski, Richard Lauber, Jr., William McConnell, Tim Miller, Jim O'Connor, Dennis Pagliotti, Charles Raso, Michael Schmerbeck, Jeremiah Sullivan, Jr., and John Trendell (hereinafter the "International IMI Trustees"), is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IMI is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), 1002(3), and 1132(d)(l) and multiemployer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IMI, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI. The IMI is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

10. Plaintiff Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("LOCAL 1") is a voluntary association under the laws of the State of New York and is a "labor organization" within the meaning of 29 U.S.C. § 185, representing employees in an "industry affecting commerce" as defined in 29 U.S.C. § 142(1) and 29 U.S.C. § 1002(12). LOCAL 1's membership includes the pointing, cleaning and caulking trade and the bricklaying trade. LOCAL 1 maintains offices located at 4 Court Square, Long Island City, New York 11101.

11. Plaintiff Jack Argila is a Trustee of the PCC Funds and President of LOCAL 1 and this lawsuit is brought in his capacity and in the Board of Trustees of the IPF and IMI (collectively, the "INTERNATIONAL FUNDS") capacities as fiduciaries of their respective funds within the meaning of ERISA 29 U.S.C. §1002 (21).

12.     Defendant S&N Builders, Inc. ("S&N") was, at all times relevant to this action, a domestic corporation organized under, and existing by virtue of, the laws of the State of New York, with its offices and principal places of business located at 156 E. 3rd Street, Mount Vernon, New York 10550 and 107 Front Street, Hempstead, New York 11550.

13.     Upon information and belief, S&N was, at all times relevant to this action, an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145, and is engaged in the construction business, which qualifies S&N as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

14.     Upon information and belief, S&N was a "trustee," with respect to monies received in connection with contracts for improvement of real property, within the meaning of Article 3-A of the New York Lien Law, N.Y. Lien L. §§ 70(1) and 71.

15.     Upon information and belief, Defendant Sakander Raja ("RAJA"), a natural person, has been, at all material times relevant to this action, the President and Chief Executive Officer of S&N. The last known addresses for RAJA are 156 E. 3rd Street, Mount Vernon, New York 10550 and 107 Front Street, Hempstead, New York 11550.

16.     Upon information and belief, RAJA was, at all times relevant to this action, an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145, and is engaged in the construction business, which qualifies RAJA as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

17.     Upon information and belief, defendant RAJA is a "fiduciary," with respect to the PCC Funds, within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

18.     Upon information and belief, RAJA exercised authority or control with respect to the management or disposition of plan assets that should have been held in trust by S&N and remitted to the PCC Funds and INTERNATIONAL FUNDS (collectively, "FUNDS").

19.     Upon information and belief, RAJA exercised unauthorized dominion or control with respect to the management or disposition of union dues and assessments (collectively, "dues and assessments") that should have been held in trust by S&N and remitted to LOCAL 1, in a manner that interfered with LOCAL 1's legal title or superior right of possession of said dues and assessments.

20.     At all relevant times herein, Defendant Doe General Contractor ("DOE CONTRACTOR" was and is a business authorized to do business in New York.

21.     At all relevant times herein, defendant Endurance Assurance Corp. ("ENDURANCE") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

22.     At all relevant times herein, defendant NORTH AMERICAN SPECIALTY INSURANCE COMPANY ("NASIC") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

23.     At all relevant times herein, defendant QBE INSURANCE CORPORATION ("QBE") was and is an insurance company duly authorized and licensed to issue insurance policies in the State of New York by the Insurance Department of the State of New York.

**PRELIMINARY STATEMENT**

24.     S&N is bound to the Project Labor Agreement Covering Specified Renovation & Rehabilitation of New York City Housing Authority ("NYCHA") Buildings and Structures (the "PLA").

25.     The PLA Letter of Assent states that "the terms of the PLA, its schedules, Addenda and Exhibits are hereby incorporated by reference herein."

26.     The PLA Letter of Assent states that the employer "[a]grees to be bound by the legally established collective bargaining agreements and local agreements as set forth in the [PLA] and [Letter of Assent] but only to the extent of Program Work and as required by the PLA."

27.     The PLA Letter of Assent states that the employer "[a]uthorizes the parties to such local trust agreements to appoint trustees and successor trustees to administer the trust funds and hereby ratifies and accepts the trustees so appointed as if made by the Contractor but only to the extent of Program Work as required by the PLA."

28.     The PLA incorporates the collective bargaining agreement between LOCAL 1 and the Building Restoration Contractors Association, Inc. ("BRCA") for the periods July 1, 2015 through June 30, 2019 and July 1, 2019 through June 30, 2023 for pointing cleaning and caulking work (the "CBAs").

29.     At all times relevant to the allegations of this Amended Complaint, S&N and RAJA (collectively, the "EMPLOYER") and LOCAL 1, through the PLA, have been bound by the CBAs, governing the rates of pay and working conditions of individuals employed by EMPLOYER within the jurisdiction of LOCAL 1.

30.     EMPLOYER employed individuals to perform work that is covered under the PLA and the CBAs.

31.     The CBAs, including, but not limited to Articles I, IV, V, VI and VII, defines: (a) the employees covered by the CBAs; and (b) the work covered by the CBAs.

32.     Articles XIII, XIV, XV, and XVI of the CBAs require EMPLOYER to pay wage and wage supplements in the form of fringe benefit contributions to the FUNDS for all employees employed by EMPLOYER and covered by the CBAs from the first day of employment forward at the rates specified in Articles XIII and XVIII of said CBAs.

33.     Articles XIII, XIV and XVI of the CBAs require EMPLOYER to deduct and remit to LOCAL 1 a portion of its employees' wages in the form of dues and various assessments for all employees performing work covered by the CBAs at rates specified in said CBAs.

34.     Article XV, Section 4 of the CBAs requires EMPLOYER to submit monthly payroll remittance reports regardless of whether the employer performed work covered by the CBAs for the month.

35.     Article XV, Section 5 of the CBAs requires EMPLOYER to be bound by the written terms of the FUNDS' Trust Agreements and further agrees to be bound by all actions taken by the Trustees of the FUNDS pursuant to said Trust Agreements, as amended, and their respective Plans, as amended, and by all Bylaws, rules and resolutions adopted to regulate each of the FUNDS.

36.     Article XV, Section 7 of the CBAs requires EMPLOYER: 1) to turn over all books and records requested by the FUNDS' auditors pursuant to a periodic review and audit designed to ensure that all contributions owed pursuant to the CBAs are paid in full; and 2) to pay the costs of the audit if EMPLOYER is found delinquent.

37. Article XV, Section 7 of the CBAs requires EMPLOYER to retain for a period of six (6) years payroll and related records necessary for a proper audit.

38. Article XV, Section 7 of the CBAs entitles the FUNDS to simple interest at a rate of not less than ten percent (10%) per annum on all contributions owed by EMPLOYER.

39. Article XV, Section 7 of the CBAs provides that the FUNDS are entitled to liquidated damages of twenty percent (20%), interest, costs, and attorneys' fees pursuant to the civil enforcement provisions of ERISA.

40. Since on or about January 1, 2016 to date, EMPLOYER has failed to submit full payment of fringe benefit contributions to the FUNDS, and dues and assessments to LOCAL 1 for employees performing work covered by the CBAs, and has failed to submit to a full audit examination in connection with work performed pursuant to the PLA.

**Labor and Material Payment Bond**

41. On behalf of S&N and/or DOE CONTRACTOR, ENDURANCE issued a labor and material payment bond with respect to work performed by DOE CONTRACTOR and/or S&N ("L&M BOND").

42. The L&M BOND defines S&N and/or DOE CONTRACTOR as the "Principal" and ENDURANCE as the "Surety."

43. Upon information and belief, the L&M BOND states a claimant is defined as one having a direct contract with the Principal or with a Sub-contractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract.

44.     Upon information and belief, the L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly makes payment to all claimants for all labor and material used or reasonably required for use in the performance of the contract.

45.     The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the terms of the PLA and CBAs.

46.     Pointing, cleaning, and caulking work was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

47.     Upon information and belief, ENDURANCE is obligated under the L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "such sum or sums as may be justly due" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

48.     Upon information and belief, under the terms of the L&M BOND, ENDURANCE and S&N and/or DOE CONTRACTOR are jointly and severally liable for all claims under the L&M BOND. Further, upon information and belief, S&N and/or DOE CONTRACTOR agreed to indemnify ENDURANCE for all claims against the L&M BOND.

49.     Upon information and belief, pursuant to the L&M BOND, ENDURANCE and S&N and/or DOE CONTRACTOR are required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Labor and Material Payment Bond for NYCHA Contract No. BW1435557**

50.     S&N and the New York City Housing Authority ("NYCHA") entered into

an agreement to perform work under Contract No. BW1435557, Exterior Restoration for Site Specific Development (City Wide).

51.    On behalf of S&N, NASIC issued a labor and material payment bond (no. 2172827) with respect to work performed by S&N under Contract No. BW1435557 ("SECOND L&M BOND").

52.    The SECOND L&M BOND defines S&N as the "Principal" and NASIC as the "Surety."

53.    The SECOND L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

54.    The SECOND L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

55.    The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the terms of the PLA and CBAs.

56.     Pointing, cleaning, and caulking work on Contract No. BW1435557 was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

57.     NASIC is obligated under the SECOND L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

58.     Under the terms of the SECOND L&M BOND, NASIC and S&N are jointly and severally liable for all claims under the SECOND L&M BOND. Further, upon information and belief, S&N agreed to indemnify NASIC for all claims against the SECOND L&M BOND.

59.     Upon information and belief, pursuant to the SECOND L&M BOND, NASIC is required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Labor and Material Payment Bond for NYCHA Contract No. BW1505555**

60.     S&N and NYCHA entered into an agreement to perform work under Contract No. BW1505555, Requirement Contract for Exterior Restoration and Site Specific Developments (Citywide).

61.     On behalf of S&N, NASIC issued a labor and material payment bond (no. 2172831) with respect to work performed by S&N under Contract No. BW1505555 ("THIRD L&M BOND").

62.     The THIRD L&M BOND defines S&N as the "Principal" and NASIC as the "Surety."

63. The THIRD L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

64. The THIRD L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

65. The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the terms of the PLA and CBAs.

66. Pointing, cleaning, and caulking work on Contract No. BW1505555 was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

67. NASIC is obligated under the THIRD L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

68. Under the terms of the THIRD L&M BOND, NASIC and S&N are jointly

and severally liable for all claims under the THIRD L&M BOND. Further, upon information and belief, S&N agreed to indemnify NASIC for all claims against the THIRD L&M BOND.

69.     Upon information and belief, pursuant to the THIRD L&M BOND, NASIC is required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Labor and Material Payment Bond for NYCHA Contract No. RF1616106**

70.     S&N and NYCHA entered into an agreement to perform work under Contract No. RF1616106, Justice Sonia Sotomayor Houses – Exterior Restoration and Roofing Replacement 1B.

71.     On behalf of S&N, NASIC issued a labor and material payment bond (no. 2206306) with respect to work performed by S&N under Contract No. RF1616106 ("FOURTH L&M BOND").

72.     The FOURTH L&M BOND defines S&N as the "Principal" and NASIC as the "Surety."

73.     The FOURTH L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

74.     The FOURTH L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto,

whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

75.     The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the terms of the PLA and CBAs.

76.     Pointing, cleaning, and caulking work on Contract No. RF1616106 was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

77.     NASIC is obligated under the FOURTH L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

78.     Under the terms of the FOURTH L&M BOND, NASIC and S&N are jointly and severally liable for all claims under the FOURTH L&M BOND. Further, upon information and belief, S&N agreed to indemnify NASIC for all claims against the FOURTH L&M BOND.

79.     Upon information and belief, pursuant to the FOURTH L&M BOND, NASIC is required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Labor and Material Payment Bond for NYCHA Contract No. RF1822221**

80.    S&N and NYCHA entered into an agreement to perform work under Contract No. RF1822221, Rooftop, Railing Replacement, and Rooftop Structure Renovation Morris II Houses.

81.    On behalf of S&N, QBE issued a labor and material payment bond (no. BND 51800024) with respect to work performed by S&N under Contract No. RF1822221 ("FIFTH L&M BOND").

82.    The FIFTH L&M BOND defines S&N as the "Principal" and QBE as the "Surety."

83.    The FIFTH L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

84.    The FIFTH L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

85.    The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the

terms of the PLA and CBAs.

86.     Pointing, cleaning, and caulking work on Contract No. RF1822221 was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

87.     QBE is obligated under the FIFTH L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

88.     Under the terms of the FIFTH L&M BOND, QBE and S&N are jointly and severally liable for all claims under the FIFTH L&M BOND. Further, upon information and belief, S&N agreed to indemnify QBE for all claims against the FIFTH L&M BOND.

89.     Upon information and belief, pursuant to the FIFTH L&M BOND, QBE is required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Labor and Material Payment Bond for NYCHA Contract No. GR1631453**

90.     S&N and NYCHA entered into an agreement to perform work under Contract No. GR1631453.

91.     On behalf of S&N, QBE issued a labor and material payment bond (no. BND 51800022) with respect to work performed by S&N under Contract No. GR1631453 ("SIXTH L&M BOND").

92.     The SIXTH L&M BOND defines S&N as the "Principal" and QBE as the "Surety."

93.     Upon information and belief, the SIXTH L&M BOND states that the bond shall be for the benefit of any materialmen or laborer having a just claim, and that all persons who have performed labor, rendered services or furnished materials and supplies shall have a direct right of action against the Principal and the Surety.

94.     Upon information and belief, the SIXTH L&M BOND states that the obligations under the bond remain in full force and effect unless the Principal promptly pays or causes to be paid all lawful claims for wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the work under the Contract and any extension or addition thereto, whether such persons be employees of the Principal or any such Subcontractor, including all persons so engaged who perform the work of laborers or mechanics at or in the vicinity of the site of the Project regardless of any contractual relationship between the Principal or such Subcontractors, or his or their successors or assigns, on the one hand and such laborers or mechanics on the other.

95.     The terms of the PLA and the CBAs bind S&N to LOCAL 1 and the FUNDS and govern all amounts justly due to the employees of S&N performing work within the terms of the PLA and CBAs.

96.     Pointing, cleaning, and caulking work on Contract No. GR1631453 was performed by employees of S&N who are members of LOCAL 1 and/or participants in the FUNDS.

97.     QBE is obligated under the SIXTH L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

98. Upon information and belief, under the terms of the SIXTH L&M BOND, QBE and S&N are jointly and severally liable for all claims under the SIXTH L&M BOND. Further, upon information and belief, S&N agreed to indemnify QBE for all claims against the FIFTH L&M BOND.

99. Upon information and belief, pursuant to the SIXTH L&M BOND, QBE is required to pay all amounts due to the FUNDS and LOCAL 1 to the extent S&N defaults in its obligation to pay wages and wage supplements for LOCAL 1 members and/or FUNDS' participants employed by S&N who performed work.

**Notification to the EMPLOYER**

100. At the direction of the Trustees, the FUNDS' auditor, Kobgo Associates, Inc. ("Kobgo"), conducted an audit examination of S&N for the period January 1, 2016 through March 31, 2019. Kobgo provided S&N with a copy of the preliminary delinquency report for review and rebuttal.

101. By emails dated January 19, 2021 and January 21, 2021, S&N submitted rebuttals to the preliminary delinquency schedule along with copies of the earnings records S&N used to prepare the rebuttals, which H&O provided to Kobgo for review.

102. Kobgo issued an audit report of S&N dated February 26, 2021, showing a delinquency due to PLAINTIFFS by S&N in the amount of $491,991.02, plus audit costs of $16,970.00, for various NYCHA projects for the period January 1, 2016 through March 31, 2019 (the "Audit"). The Audit contained scope limitations because Kobgo requested, but was not provided, a complete set of weekly certified payroll records.

103. By letter dated March 9, 2021, H&O, on behalf of the FUNDS, provided S&N with a copy of the Audit and noted the scope limitations. H&O demanded that S&N: (1)

provide the missing certified payroll reports, and (2) either remit payment of the audit delinquency and audit costs in the total amount of $508,961.02 or submit written audit objections with supporting documentation.

104.    By email dated March 10, 2021, S&N advised that they intend to dispute a portion of the Audit but wanted to resolve the undisputed portion of the Audit and would make a down-payment toward the undisputed portion of the Audit.

105.    S&N submitted a check (no. 13909), dated March 17, 2021, in the amount of $49,118.45 in partial payment of the Audit to H&O, which H&O forwards to the FUNDS.

106.    S&N and the FUNDS attempted to reach a resolution of the Audit, but settlement terms were never agreed upon and no settlement agreement was ever entered into by the parties.

107.    S&N submitted a check (no. 14152), dated April 1, 2021, in the amount of $38,246.75, directly to the FUNDS in partial payment of the Audit.

108.    S&N submitted a check (no. 14464), dated June 9, 2021, in the amount of $38,246.75, directly to the FUNDS in partial payment of the Audit.

109.    S&N submitted a check (no. 14518), dated July 7, 2021, in the amount of $38,246.75, directly to the FUNDS in partial payment of the Audit.

110.    S&N submitted a check (no. 15007), dated August 24, 2021, in the amount of $38,246.75, directly to the FUNDS in partial payment of the Audit.

111.    By letter dated November 9, 2021, H&O notified S&N that contributions, dues, and assessments, along with the accompanying employer remittance reports, were due and owing to the FUNDS for work performed by S&N during the period April 2021 through the date of the letter for various NYCHA projects. H&O, on behalf of the FUNDS, demanded that S&N

immediately submit: (a) the missing employer remittance reports for the period April 2021 through the date of the letter; (b) copies of the certified payroll records for work performed by S&N during the period April 2021 through the date of the letter; and (c) payment for the contributions, dues, and assessments due and owing to the FUNDS for the period April 2021 through the date of the letter.

112.     By email dated November 10, 2021, the FUNDS requested that S&N submit the missing remittance reports for the period April 2021 through September 2021 as soon as possible.

113.     By email dated November 17, 2021, H&O notified S&N that if S&N does not submit the employer remittance reports for April 2021 through the date of the email, then H&O has been instructed to file an Article 3-A lien with NYCHA.

114.     By email dated November 17, 2021, S&N submitted employer remittance reports for the months of April 2021 and May 2021 only.

115.     By letter to NYCHA and copied to S&N dated November 19, 2021, H&O, on behalf of the FUNDS, notified NYCHA pursuant to Article 8 of the New York Labor Law, Article 3-A of the New York Lien Law, and Article 11, Section 2(c) of the PLA that, based upon a review of shop steward reports, S&N had failed to pay contributions, dues and assessments in an amount not less than $285,657.42, subject to verification by audit, to the FUNDS for work performed by S&N on NYCHA's Ingersoll Houses project, and requested that NYCHA withhold payment of monies due to S&N in light of S&N's failure to pay the contributions, dues and assessments

116.     S&N and H&O spoke on November 29, 2021 and November 30, 2021 with regard to the missing employer remittance reports and certified payroll records.

117.     By email dated December 6, 2021, H&O notified S&N that S&N had not yet submitted any of the missing employer remittance reports or certified payroll records. S&N responded by email with copies of employer remittance reports for May 2021 through October 2021 only.

118.     By email dated December 20, 2021, H&O notified S&N that S&N had still not yet submitted the requested certified payroll records and that the FUNDS had directed H&O to proceed with a lawsuit given S&N's lack of cooperation in producing all of the requested records. S&N responded by email with additional copies of the previously submitted employer remittance reports for May 2021 through October 2021.

119.     S&N and H&O spoke on December 20, 2021 with regard to the missing certified payroll records.

120.     By email dated December 21, 2021, S&N submitted copies of certified payroll records for various projects for the period April 2021 through November 2021.

121.     Kobgo reviewed the certified payroll records and prepared a Delinquency and Omissions Schedule dated January 12, 2022 for the period March 29, 2021 through November 21, 2021 (the "Delinquency Schedule"), showing a delinquency due and owing to PLAINTIFFS by S&N in the amount of $728,918.32.

122.     By letter dated March 23, 2022, H&O, on behalf of the FUNDS, provided S&N with: (1) another copy of the Audit (noting a total of $306,855.57 remaining due for the Audit delinquency and audit costs after crediting the payments previously made by S&N towards the Audit); (2) a copy of the Delinquency Schedule showing a delinquency of $728,918.32 for the period March 29, 2021 through November 21, 23021; and (3) a proposed Settlement Agreement and Confession of Judgment to resolve both the Audit and the Delinquency Schedule.

123.    S&N and the FUNDS attempted to reach a global resolution of the Audit and the Delinquency Schedule, but settlement terms were never agreed upon and no settlement agreement was ever entered into by the parties.

124.    S&N submitted two (2) payments directly to the FUNDS (check no. 16802, dated March 28, 2022, in the amount of $100,000.00, and check no. 17347, dated May 13, 2022, in the amount of $52,482.30), for a portion of the Audit delinquency and contributions, dues and assessments for April 2021.

125.    S&N also submitted check no. 17346, dated May 13, 2022 in the amount of $9,786.04, which allegedly covers contributions, dues and assessments for work performed during April 2020, but which cannot be verified since S&N did not submit the accompanying employer remittance report for April 2020.

126.    To date, S&N owes the FUNDS unpaid contributions, dues, and assessments pursuant to the Audit in the amount of $230,181.78 for the period January 1, 2016 through March 31, 2019. The amount of *contributions* that remain owed to the FUNDS under the Audit is not less than $211,892.56 and the amount of *dues and assessments* that remain owed to LOCAL 1 under the Audit is not less than $18,289.22.

127.    To date, S&N owes the FUNDS unpaid contributions, dues, and assessments pursuant to the Delinquency Schedule in the amount of $588,107.02 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit. The amount of *contributions* owed to the FUNDS under the Delinquency Schedule is not less than $557,054.32 and the amount of *dues and assessments* owed to LOCAL 1 under the Delinquency Schedule is not less than $31,052.70.

**Violations of the CBAs, ERISA, Common Law, and New York State Lien Law**

128.  In violation of the CBAs and ERISA, EMPLOYER has failed to remit delinquent contributions to the FUNDS pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019.

129.  In violation of the CBAs and ERISA, EMPLOYER has failed to remit delinquent contributions to the FUNDS pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021 in an amount not less than $557,054.32, plus an additional amount for the period November 22, 2021 to date, to be verified by audit, and continuing throughout the pendency of this action.

130.  Pursuant to 29 U.S.C. § 1132(g)(2) and the CBAs, the FUNDS are entitled to recover: (a) all remaining delinquent contributions pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019; (b) all delinquent contributions pursuant to the Delinquency Schedule in the amount of $557,054.32 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; (c) interest at the rate of ten percent (10%) per annum on all delinquent contributions (as defined in the CBAs); (d) the greater of interest or liquidated damages of twenty percent (20%) on all delinquent contributions; (e) audit costs; (f) reasonable attorney's fees, costs, and expenses; and (g) such other legal and equitable relief as the Court deems appropriate.

131.  In violation of the CBAs, EMPLOYER failed to remit dues and assessments to LOCAL 1 pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019.

132. In violation of the CBAs, EMPLOYER failed to remit dues and assessments to LOCAL 1 pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021 in an amount not less than $31,052.70, plus an additional amount for the period November 22, 2021 to date, to be verified by audit, and continuing throughout the pendency of this action.

133. Pursuant to the CBAs and New York C.P.L.R. 5001 and 5004, LOCAL 1 is entitled to recover (a) all delinquent dues and assessments pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019; (b) all delinquent dues and assessments pursuant to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; and (c) prejudgment interest at nine percent (9%) per annum from the date due to the date paid.

**Fiduciary Claims against RAJA**

134. New York Lien Law, Article 3-A, Section 70 imposes a trust upon all funds dedicated to an improvement of a parcel of real property.

135. New York Lien Law, Article 3-A also imposes a fiduciary duty on RAJA to distribute the proceeds of the trust in accordance with the priority scheme set forth therein.

136. Article XV, Section 7(e) of the CBAs binds, personally, the officers, partners, directors, stockholders and/or employees of S&N who are vested with authority and control over the submission of reports and/or the payments of contributions to the FUNDS, to submit the required reports and to pay the required contributions to the FUNDS.

137. Article XV, Section 7(e) of the CBAs states specifically that "[t]he Employer recognizes that once the contributions become due and owing to the Fringe Benefit

Funds, the contributions are assets of the Fringe Benefit Funds, and Employer acts as a fiduciary of those fund assets until they are paid over to the Fringe Benefit Funds."

138.    Article XV, Section 13 of the CBAs provides that "Employers whose contributions are due and owing to the Fringe Benefit Funds are fiduciaries of the Fringe Benefit Funds as to those contributions until the contributions are remitted to the Fringe Benefit Funds."

139.    Article XV, Section 5 of the CBAs binds EMPLOYER directly to the provisions of the Agreement and Declaration of Trust for each of the FUNDS (Welfare, Pension and Annuity, individually), as though EMPLOYER had actually signed the individual documents, and further binds EMPLOYER to all actions taken by the Trustees of each of the FUNDS pursuant to said Agreements and Declarations of Trust, as amended, and their respective Plans, as amended.

140.    The Agreement and Declaration of Trust for each of the FUNDS provides, in relevant part, under Article II, Section 2 that: "The assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers. . . ."

141.    The Agreement and Declaration of Trust for each of the FUNDS provides, in relevant part, under Article III, Section 3 that: "[a]ll contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary."

142.    The IPF Trust Agreement provides, in relevant part, under the Amendment of May 21, 2003 that: "[t]itle to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund."

143.    Upon information and belief, RAJA exercised dominion and control respecting the management or disposition of the FUNDS' plan assets (i.e., contributions) by acting

as the President and Chief Executive Officer of S&N, and by signing checks and submitting certified payroll reports and employer remittance reports on behalf of EMPLOYER.

144. Upon information and belief, RAJA diverted contributions due the FUNDS, to other entities and individuals, in order to avoid his fiduciary obligations.

145. In violation of the CBAs and ERISA, RAJA failed to remit all contributions to the FUNDS pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019.

146. In violation of the CBAs and ERISA, RAJA failed to remit all contributions pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021 in an amount not less than $557,054.32, plus an additional amount for the period November 22, 2021 to date, to be verified by audit, and continuing throughout the pendency of this action.

147. Pursuant to 29 U.S.C. § 1109(a) and the CBAs, the FUNDS are entitled to recover from RAJA the following: (a) all remaining delinquent contributions pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019; (b) all delinquent contributions pursuant to the Delinquency Schedule in the amount of $557,054.32 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; (c) interest at the rate of ten percent (10%) per annum on all delinquent contributions (as defined in the CBAs); (d) the greater of interest or liquidated damages of twenty percent (20%) on all delinquent contributions; (e) audit costs; (f) reasonable attorney's fees, costs, and expenses; and (g) such other legal and equitable relief as the Court deems appropriate.

148.     Pursuant to Article XIV of the CBAs, EMPLOYER must deduct union dues and assessments from employees' wages and is required to remit union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of S&N.

149.     Upon information and belief, as the President and Chief Executive Officer of S&N and by signing checks and submitting certified payroll reports and employer remittance reports on behalf of S&N, RAJA exercised dominion and control respecting the management or disposition of union dues and assessments that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

150.     RAJA failed to remit union dues and assessments due and owing to LOCAL 1 for employees of S&N pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019.

151.     RAJA failed to remit union dues and assessments due and owing to LOCAL 1 for employees of S&N pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021 in an amount not less than $31,052.70, plus an additional amount for the period November 22, 2021 to date, to be verified by audit, and continuing throughout the pendency of this action.

152.     Upon information and belief, RAJA diverted dues and assessments due to LOCAL 1 to other entities and/or individuals in order to avoid his fiduciary obligations.

153.     RAJA interfered with Plaintiff LOCAL 1's right to possess and control those dues and assessments under common law and Article 3-A of the New York Lien Law.

154.     Pursuant to common law and Article 3-A of the New York Lien Law, LOCAL 1 is entitled to recover from RAJA the union dues and assessments pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019 and pursuant

to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action.

### AS AND FOR PLAINTIFF FUNDS' FIRST CLAIM
### FOR RELIEF AGAINST EMPLOYER

155. Plaintiff FUNDS repeat and reallege paragraphs "1" through "154" hereof with the same force and effect as if such were fully set forth herein.

156. EMPLOYER's failure to submit contributions due and owing the FUNDS, as set forth in paragraphs "100" through "127" herein, constitutes a violation of 29 U.S.C. §§ 1132 and 1145.

157. Accordingly, pursuant to 29 U.S.C. § 1132(g)(2), the FUNDS are entitled to recover the following: (a) all unpaid contributions pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019; (b) all unpaid contributions pursuant to the Delinquency Schedule in the amount of $557,054.32 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; (c) interest at the rate of ten percent (10%) per annum on all delinquent contributions (as defined in the CBAs); (d) the greater of interest or liquidated damages of twenty percent (20%) on all delinquent contributions; (e) audit costs; (f) reasonable attorney's fees, costs, and expenses; and (g) such other legal and equitable relief as the Court deems appropriate.

### AS AND FOR PLAINTIFF FUNDS' SECOND CLAIM
### FOR RELIEF AGAINST EMPLOYER

158. Plaintiff FUNDS repeat and reallege paragraphs "1" through "157" hereof with the same force and effect as if such were set forth here in full.

159.    EMPLOYER's failure to submit contributions due and owing to the FUNDS pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019 and pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021 in an amount not less than $557,054.32, plus an additional amount for the period November 22, 2021 to date, to be verified by audit, and continuing throughout the pendency of this action as set forth in paragraphs "100" through "127" herein, constitutes a violation of the CBAs.

160.    Accordingly, the CBAs entitle the FUNDS to receive from EMPLOYER the following: (a) all remaining delinquent contributions pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019; (b) all delinquent contributions pursuant to the Delinquency Schedule in the amount of $557,054.32 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; (c) audit costs; and (d) full damages pursuant to ERISA, including liquidated damages of twenty percent (20%), interest at ten percent (10%) per annum (as defined in the CBAs), reasonable attorney's fees, expenses and costs of the action.

### AS AND FOR PLAINTIFF LOCAL 1'S FIRST CLAIM
### FOR RELIEF AGAINST EMPLOYER

161.    Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "160" hereof with the same force and effect as if fully set forth herein.

162.    EMPLOYER's failure to remit dues and assessments to LOCAL 1 pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019

and pursuant to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action, as set forth in paragraphs "100" through "127" herein, constitutes a violation of Article XIV of the CBAs.

163.    Accordingly, EMPLOYER is liable to LOCAL 1 for the following: (a) unremitted dues and assessments pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019; (b) unremitted dues and assessments pursuant to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; and (c) accrued prejudgment interest of nine percent (9%) per annum on said dues and assessments from the due date to the date of payment.

**AS AND FOR THE PLAINTIFF FUNDS' CLAIM**
**FOR RELIEF AGAINST DEFENDANT RAJA AS A FIDUCIARY**

164.    Plaintiff FUNDS repeat and reallege each and every allegation contained in paragraphs "1" through "163" of this Amended Complaint as if fully set forth herein.

165.    EMPLOYER is required to make contributions to the FUNDS.

166.    To the extent that RAJA is the President and Chief Executive Officer of S&N and signed checks and submitted certified payroll records and employer remittance reports on behalf of S&N, RAJA constitutes a fiduciary under ERISA, 29 U.S.C. §1002(21)(A) with respect to the FUNDS, as he exercised authority or control regarding the management or disposition of the FUNDS' assets on behalf of S&N.

167.     Similarly, RAJA is a fiduciary under New York Lien Law, Article 3-A, Section 70, to the extent that he controls/controlled the proceeds received by S&N for work performed in connection with an improvement of real property.

168.     RAJA's failure to submit contributions due and owing from S&N to the FUNDS, as set forth in paragraphs "100" through "127" herein, constitutes a violation of ERISA fiduciary duties, 29 U.S.C. § 1104, and the fiduciary duties imposed by New York Lien Law, Article 3-A.

169.     Pursuant to ERISA, 29 U.S.C. § 1109(a), RAJA is personally liable to make good any losses to the FUNDS resulting from each such breach and to restore any profits which would have been made through use of assets of the FUNDS.

170.     Accordingly, pursuant to 29 U.S.C. §§ 1109 and 1132(g)(1), the FUNDS are entitled to recover from RAJA personally: (a) all of S&N's unpaid contributions pursuant to the Audit in the amount of $211,892.56 for the period January 1, 2016 through March 31, 2019; (b) all of S&N's unpaid contributions pursuant to the Delinquency Schedule in the amount of $557,054.32 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; (c) accrued prejudgment interest of ten percent (10%) per annum on said unpaid contributions (as defined in the CBAs); (d) audit costs; (e) reasonable attorney's fees, expenses, and the cost of the action; and (f) such other legal and equitable relief as the Court deems appropriate.

## AS AND FOR THE PLAINTIFF LOCAL 1'S CLAIM
## FOR RELIEF AGAINST DEFENDANT RAJA AS A FIDUCIARY

171.    Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "170" hereof with the same force and effect as if fully set forth herein.

172.    In violation of the CBAs, RAJA failed to remit dues and assessments to LOCAL 1 for members employed by S&N pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019 and pursuant to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action, as set forth in paragraphs "100" through "127" herein.

173.    Pursuant to Article XIV, Section 1(a) of the CBAs, S&N deducted union dues and assessments from employees' wages and was required to remit the union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of S&N.

174.    RAJA exercised dominion and control respecting the management or disposition of union dues and assessments as President and Chief Executive Officer of S&N and by signing checks and submitting certified payroll records and employer remittance reports on behalf of S&N.

175.    RAJA was obligated to hold dues and assessments in trust and remit them to LOCAL 1.

176.    RAJA interfered with plaintiff LOCAL 1's right to possess and control those dues and assessments.

177. Pursuant to common law, RAJA is personally liable to make good any losses to LOCAL 1 from any breach of his duty to remit dues and assessments due and owing LOCAL 1.

178. Accordingly, pursuant to common law, LOCAL 1 is entitled to recover from RAJA personally: (a) all unpaid dues and assessments found due and owing pursuant to the Audit in the amount of $18,289.22 for the period January 1, 2016 through March 31, 2019; (b) all unpaid dues and assessments found due and owing pursuant to the Delinquency Schedule in the amount of $31,052.70 for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date to be verified by audit, and continuing throughout the pendency of this action; and (c) prejudgment interest on said dues and assessments from the date the cause of action accrued.

**AS AND FOR PLAINTIFF FUNDS' AND LOCAL 1'S
FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF
AGAINST DEFENDANT DOE CONTRACTOR**

179. Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "178" hereof with the same force and effect as if such were fully set forth herein.

180. Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against DOE CONTRACTOR is a state law claim based on the same underlying facts and circumstances as the ERISA claim against S&N contained herein.

181. Upon information and belief, at all times herein mentioned, defendant DOE CONTRACTOR was the general contractor for work performed by S&N on various projects, whereby DOE CONTRACTOR entered into a contract with NYCHA and agreed to furnish labor

and material for construction on the projects, in accordance with NYCHA's requirements and specifications.

182. Upon information and belief, DOE SURETY was, at all times herein mentioned, the surety for the projects pursuant to NYCHA's requirements and specifications, and furnished labor and material payment bonds to DOE CONTRACTOR covering the labor and materials to be furnished for work performed and to be performed at the projects.

183. Under the L&M BOND, defendants DOE SURETY and DOE CONTRACTOR are jointly and severally liable for all payments to all persons having a direct relationship with S&N, a sub-contractor of DOE CONTRACTOR, for labor, material and/or both to be furnished for work performed and to be performed at the projects pursuant to the terms of the L&M BOND.

184. Pursuant to the L&M BOND, DOE SURETY is liable "for such sum or sums as may be justly due" for claimant's work or labor to the extent that S&N refuses or fails to make payment to claimant for work performed by claimant.

185. Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against DOE CONTRACTOR for all amounts found due and owing by S&N to the FUNDS and LOCAL 1 pertaining to work performed by S&N at the projects covered by the L&M BOND including interest, damages, audit costs, attorney's fees, costs and expenses.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 1'S
FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST
<u>DEFENDANT ENDURANCE</u>**

186. Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "185" hereof with the same force and effect as if such were fully set forth herein.

187.    Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against ENDURANCE is a state law claim based on the same underlying facts and circumstances as the ERISA claim against S&N contained herein.

188.    Pursuant to the L&M BOND, NY State Finance Law §137, and NY Labor Law §220-g, ENDURANCE is liable "for such sum or sums as may be justly due" the FUNDS and LOCAL 1 pursuant to the AGREEMENT to the extent that S&N refuses or fails to make payment to the FUNDS and LOCAL 1 for work performed.

189.    Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against ENDURANCE for all amounts found due and owing by S&N to the FUNDS and LOCAL 1 pertaining to work performed by S&N at the projects covered by the L&M BOND including interest, damages, audit costs, attorney's fees, costs and expenses.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 1'S
FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST
DEFENDANT NASIC**

190.    Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "189" hereof with the same force and effect as if such were fully set forth herein.

191.    Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against NASIC is a state law claim based on the same underlying facts and circumstances as the ERISA claim against S&N contained herein.

192.    NASIC is obligated under the SECOND L&M BOND, THIRD L&M BOND, FOURTH L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

193. Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against NASIC for all amounts found due and owing by S&N to the FUNDS and LOCAL 1 pertaining to work performed by S&N at the projects covered by the SECOND L&M BOND, THIRD L&M BOND, and FOURTH L&M BOND, including interest, damages, audit costs, attorney's fees, costs and expenses.

**AS AND FOR PLAINTIFFS FUNDS' AND LOCAL 1'S**
**FIRST JOINT SUPPLEMENTAL CLAIM FOR RELIEF AGAINST**
**DEFENDANT QBE**

194. Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation contained in paragraphs "1" through "193" hereof with the same force and effect as if such were fully set forth herein.

195. Plaintiffs FUNDS' and LOCAL 1's joint supplemental claim for relief against QBE is a state law claim based on the same underlying facts and circumstances as the ERISA claim against S&N contained herein.

196. QBE is obligated under the FIFTH L&M BOND, SIXTH L&M BOND, NY State Finance Law §137, NY Labor Law §220-g and the common law to pay "all lawful claims" under the PLA and CBAs to employees represented by LOCAL 1 and/or participants in the FUNDS for work performed by said employees.

197. Accordingly, the FUNDS and LOCAL 1 are entitled to judgment against QBE for all amounts found due and owing by S&N to the FUNDS and LOCAL 1 pertaining to work performed by S&N at the projects covered by the FIFTH L&M BOND and SIXTH L&M BOND, including interest, damages, audit costs, attorney's fees, costs and expenses.

**WHEREFORE**, Plaintiffs FUNDS and LOCAL 1 hereby request judgment in a total principal amount not less than $818,288.80, plus additional amounts pursuant to ERISA and the CBAs, broken down as follows:

a.  against EMPLOYER, for all outstanding past due contributions in an amount not less than $211,892.56 to the FUNDS pursuant to the Audit for the period January 1, 2016 through March 31, 2019;

b.  against EMPLOYER, for all outstanding past due contributions in an amount not less than $557,054.32 to the FUNDS pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date, to be verified by complete audit, and continuing throughout the pendency of this action;

c.  against EMPLOYER, for payment of all outstanding dues and assessments in an amount not less than $18,289.22 to LOCAL 1 pursuant to the Audit for the period January 1, 2016 through March 31, 2019;

d.  against EMPLOYER, for payment of all outstanding dues and assessments in an amount not less than $31,052.70 to LOCAL 1 pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date, to be verified by complete audit, and continuing throughout the pendency of this action;

e.  against EMPLOYER, for interest of ten percent (10%) on all unpaid contributions found to be due and owing under the CBAs, in accordance with the CBAs and ERISA;

f.  against EMPLOYER, for accrued prejudgment interest on all unpaid dues and assessments found to be due and owing under the CBAs;

g.  against EMPLOYER, for the greater of additional interest of ten percent (10%) or statutory liquidated damages of twenty percent (20%) on all unpaid contributions found due and owing under the CBAs, in accordance with ERISA and the CBAs;

h.  against EMPLOYER, for all audit costs;

i.  against EMPLOYER, for reasonable attorney's fees, costs, and expenses, in accordance with the CBAs and ERISA;

j.  against RAJA, for all outstanding past due contributions in an amount not less than $211,892.56 to the FUNDS pursuant to the Audit for the period January 1, 2016 through March 31, 2019 in accordance with ERISA;

k.    against RAJA, for all outstanding past due contributions in an amount not less than $557,054.32 to the FUNDS pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date, to be verified by complete audit, and continuing throughout the pendency of this action, in accordance with ERISA;

l.    against RAJA, for payment of all outstanding dues and assessments in an amount not less than $18,289.22 to LOCAL 1 pursuant to the Audit for the period January 1, 2016 through March 31, 2019;

m.    against RAJA, for payment of all outstanding dues and assessments in an amount not less than $31,052.70 to LOCAL 1 pursuant to the Delinquency Schedule for the period March 29, 2021 through November 21, 2021, plus an additional amount for the period November 22, 2021 to date, to be verified by complete audit, and continuing throughout the pendency of this action;

n.    against RAJA, for accrued prejudgment interest on all outstanding past due contributions to the FUNDS;

o.    against RAJA, for accrued prejudgment interest on outstanding dues and assessments to LOCAL 1;

p.    against RAJA, for audit costs, attorney's fees, costs, and expenses from this action, in accordance with ERISA;

q.    against DOE CONTRACTOR for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs with EMPLOYER and DOE CONTRACTOR to the extent S&N refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the L&M BOND;

r.    against ENDURANCE for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs with EMPLOYER and DOE CONTRACTOR to the extent S&N refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the L&M BOND;

s.    against NASIC for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs with EMPLOYER to the extent S&N refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the SECOND L&M BOND, THIRD L&M BOND, and FOURTH L&M BOND;

t.    against QBE for all amounts due the FUNDS and LOCAL 1 pursuant to the CBAs with EMPLOYER to the extent S&N refuses or fails to make payment to the FUNDS and LOCAL 1 for employees who performed work at the projects covered by the FIFTH L&M BOND and SIXTH L&M BOND; and

u.      for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 15, 2024

Respectfully submitted,

HOLM & O'HARA LLP
*Attorneys for Plaintiffs*

By:    /s/ Katherine M. Morgan  
     Katherine M. Morgan (KM 8860)
     3 West 35th Street, 9th Floor
     New York, New York 10001
     (212) 682-2280
     k.morgan@hohlaw.com

*Index No.*     **CV-3324**     *Year* **2022**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**JACK ARGILA, in his fiduciary capacity as a Trustee for the POINTERS, CLEANERS & CAULKERS WELFARE, PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT APPRENTICE TRAINING FUND, the LABOR MANAGEMENT FUND, and the PROMOTION FUND; and as President of the BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL     UNION NO. 1, B.A.C.I.U., AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND and the INTERNATIONAL MASONRY INSTITUTE,**

                                                     **Plaintiffs,**

          **- against –**

**S&N BUILDERS, INC.; SAKANDER RAJA; DOE GENERAL CONTRACTOR; ENDURANCE ASSURANCE CORP.; NORTH AMERICAN SPECIALTY INSURANCE COMPANY; and QBE INSURANCE CORPORATION,**

                                                      **Defendants.**

---

## SECOND AMENDED COMPLAINT

---

## HOLM & O'HARA LLP

*Attorneys for:*               **Plaintiff(s)**

**3 West 35th Street, 9th Floor**
**New York, NY 10001**

---