UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
JACK ARGILA, in his fiduciary capacity as a Trustee for the POINTERS, CLEANERS & CAULKERS WELFARE, PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT APPRENTICE TRAINING FUND, the LABOR MANAGEMENT FUND, and the PROMOTION FUND; and as President of the BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U., AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND and the INTERNATIONAL MASONRY INSTITUTE,

Plaintiffs,

-against-

S&N BUILDERS, INC. and SAKANDER RAJA,

Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-3324 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On June 6, 2022, Jack Argila, as a Trustee for the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds, the Bricklayers Joint Apprentice Training Fund, the Labor Management Fund, and the Promotion Fund (the "PCC Funds"), and as President of the Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("Local 1"), as well as the Trustees of the Bricklayers and Trowel Trades International Pension Fund and the International Masonry Institute (the "International Funds" and, collectively with the PCC Funds, the "Funds") (Local 1 and the Funds collectively, "Plaintiffs"), commenced this action against Defendants S&N Builders, Inc.

("S&N" or "S&N Builders"), Sakander Raja ("Raja") (collectively, "Defendants"), Doe General Contractor, and Doe Surety Company. *See generally* Compl., ECF 1. On March 28, 2023, Plaintiffs filed an amended complaint, naming Defendant Endurance Assurance Corp. in place of Doe Surety Company. *See generally* Am. Compl., ECF 25. On November 15, 2024, Plaintiffs filed a second amended complaint, adding Defendants North American Specialty Insurance Company and QBE Insurance Corporation as parties.[1] *See generally* Second Am. Compl., ECF 53. The second amended complaint seeks delinquent benefit contributions, dues, and assessments, as well as related relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, the Labor Management Relations Act ("LMRA"),[2] 29 U.S.C. § 141, *et seq.*, the New York Lien Law, N.Y. Lien L. § 70, *et seq.*, and common law.

---

[1] On April 22, 2025, Plaintiffs and Defendant Endurance Assurance Corporation filed a stipulation of dismissal, which the Court entered on April 25, 2025. *See* Stipulation of Dismissal, ECF 70; Apr. 25, 2025 ECF Order & ECF 71. On July 1, 2025, Plaintiffs filed a notice of voluntary dismissal as to Defendant QBE Insurance Corporation. Notice of Voluntary Dismissal, ECF 74. On November 26, 2025, Plaintiffs and Defendant North American Specialty Insurance Company (n/k/a Swiss Re Corporate Solutions America Insurance Corporation) filed a stipulation of dismissal, which the Court entered on December 2, 2025. Stipulation of Dismissal, ECF 83; Dec. 2, 2025, ECF Order & ECF 84. Accordingly, only Defendants S&N Builders and Sakander Raja remain.

[2] The Court notes that Plaintiffs refer to the LMRA by name only once in their second amended complaint and do not cite the statute in connection with any of their causes of action. Second Am. Compl., ECF 53, ¶ 1; *see generally id.* However, because Plaintiffs' claims involving alleged violations of the CBAs "involve interpretation of the CBA[s], [their] claims are governed by" the LMRA rather than state contract law. *Arnold v. Beth Abraham Health Services, Inc.*, No. 09-CV-6049 (DLC), 2009 WL 5171736, at *2 (S.D.N.Y. Dec. 30, 2009), *aff'd on other grounds sub nom. Arnold v. 1199 SEIU*, 420 F. App'x 48 (2d Cir. 2011) (summary order); *see, e.g.*, *Brown v. Nat'l Football League*, 219 F. Supp. 2d 372, 378 (S.D.N.Y. 2002) ("It is well established . . . that [the LMRA] completely preempts state law claims . . . that involve the interpretation and application of a CBA" and "an action that in substance charges a violation of a CBA may be removed to

Plaintiffs and Defendants S&N Builders and Sakander Raja have each moved for summary judgment. Pls. Mot. for Summ. J. ("Pls. Mot."), ECF 87; Defs. Cross-Mot. for Summ. J. ("Defs. Mot."), ECF 94. For the reasons discussed below, the Court grants in part Plaintiffs' motion for summary judgment and denies Defendants' cross-motion for summary judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

The Funds are "jointly trusteed multiemployer plans established and maintained pursuant to collective bargaining agreements." Pls. Rule 56.1 Statement ("Pls. 56.1"), ECF 87-1, ¶ 1 (quotation marks omitted). *But see* Defs. Counter Rule 56.1 Statement, ECF 92, ¶ 1 (noting that "Defendants are without knowledge to either admit or deny" and that the statement is "not one of material facts"); Defs. Counter Rule 56.1 Statement ("Defs. Counter-56.1"), ECF 94, ¶ 1 (same).[3] The Funds are union funds that "represent employee participants that perform work within the scope of" Local 1's collective bargaining agreement. Pls. 56.1, ECF 87-1, ¶ 1. As relevant here, Plaintiffs represent

---

federal court, even though the complaint itself did not include a federal cause of action" (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368–69 (1990); *Allis-Chalmers v. Lueck*, 471 U.S. 202, 214 (1985))); *Cespuglio v. Ward*, No. 03-CV-8603 (SAS), 2004 WL 1088235, at *3 (S.D.N.Y. May 13, 2004) (finding that LMRA "preemption applies in *any* case that raises questions about the construction of, or rights and responsibilities under, a collective bargaining agreement, regardless of whether the plaintiff's claims sound in tort or contract"); *Int'l Brotherhood of Elec. Workers Loc. 106 v. Marker Elec. Contracting, Inc.*, No. 16-CV-932-FPG, 2018 WL 4327815, at *4 (W.D.N.Y. Sept. 10, 2018).

[3] The Court notes that Defendants submitted duplicative filings. As relevant here, ECF 92 and ECF 94 (Defendants' response to Plaintiffs' Rule 56.1 Statement) are identical to one another, as are ECF 92-2 and ECF 94-2 (Defendants' Rule 56.1 Statement). *See generally* Defs. Counter Rule 56.1 Statement, ECF 92; Defs. Counter-56.1, ECF 94; Defs. 56.1, ECF 92-2; Defs. 56.1, ECF 94-2. For the purposes of recounting the parties' statements and counterstatements, the Court cites to ECF 94 and ECF 94-2.

workers who engaged in pointing, cleaning, and caulking work for Defendants on a number of projects for the New York City Housing Authority ("NYCHA").

More specifically, from 2015 through 2019, Defendant S&N Builders "submitted competitive bids and was awarded six (6) public works construction projects by" the NYCHA. Defs. Rule 56.1 Statement ("Defs. 56.1"), ECF 94-2, ¶ 1 (citing Raja Affirmation, ECF 94-3, ¶ 3); Pls. Counter Rule 56.1 Statement ("Pls. Counter-56.1"), ECF 93-1, ¶ 1. Defendant Raja "is the President and Chief Executive Officer of S&N." Pls. 56.1, ECF 87-1, ¶ 7 (citing Morgan Decl., ECF 90, ¶ 5 (citing Entity Information, Ex. GG to Morgan Decl., ECF 90-1)); Defs. Counter-56.1, ECF 94, ¶ 7; *see also* Defs. 56.1, ECF 94-2, ¶ 7; Pls. Counter-56.1, ECF 93-1, ¶ 7.

For each of these six NYCHA projects, Defendant S&N Builders "provided payment and performance bonds from an insurance company surety." Defs. 56.1, ECF 94-2, ¶ 2 (citing Raja Affirmation, ECF 94-3, ¶ 5; Payment Bonds, Ex. HH to Morgan Decl., ECF 90-2); Pls. Counter-56.1, ECF 93-1, ¶ 2. The payment bonds each provided that:

> All persons who have performed labor, rendered services or furnished materials and supplies, as aforesaid, shall have a direct right of action against the Principal [S&N] and his, its or their successor[s] [a]nd assigns, and the Surety herein, or against either or both of any of them and their successors and assigns. Such persons may sue in their own name, and may prosecute the suit to judgment and execution without the necessity of joining with any other person as party plaintiff.

Defs. 56.1, ECF 94-2, ¶ 24 (quoting Payment Bonds, Ex. HH to Morgan Decl., ECF 90-2); Pls. Counter-56.1, ECF 93-1, ¶ 24. Each payment bond for the six NYCHA projects was issued between April 30, 2015, and July 11, 2019. Defs. 56.1, ECF 94-2, ¶ 23 (citing Payment Bonds, Ex. HH to Morgan Decl., ECF 90-2); Pls. Counter-56.1, ECF 93-1, ¶ 23. Defendant Raja signed the payment bonds for all but one of the projects, and signed

some of the checks for contributions, dues, and assessments.[4] Pls. 56.1, ECF 87-1, ¶ 8 (citing Payment Bonds, Ex. HH to Morgan Decl., ECF 90-2; Argila Aff., ECF 88, ¶¶ 38, 40, 45, 48, 50, 56, 76; Exs. L–Q, V to Argila Aff., ECF 88-12, 88-13, 88-14, 88-15, 88-16, 88-17, 88-22); Defs. Counter-56.1, ECF 94, ¶ 8.

Moreover, "[a]s a condition of being awarded each of the NYCHA construction contracts," Defendant S&N Builders "was required to execute a Letter of Assent agreeing to be bound by the terms of the" Project Labor Agreement ("PLA").[5] Defs. 56.1, ECF 94-2, ¶ 6 (citing Raja Affirmation, ECF 94-3, ¶ 7); Pls. Counter-56.1, ECF 93-1, ¶ 6. The Letters of Assent were executed by Defendant Raja in his official capacity as President of S&N Builders, not in his individual capacity. Defs. 56.1, ECF 94-2, ¶¶ 7–8 (citing Ex. D to Argila Aff., ECF 88-4); Pls. Counter-56.1, ECF 93-1, ¶¶ 7–8. Plaintiffs assert that Defendant Raja, as President of Defendant S&N Builders, executed a Letter of Assent to the PLA for NYCHA projects and that Defendant S&N Builders "performed work on a total of 17 different NYCHA" projects. Pls. 56.1, ECF 87-1, ¶ 11 (citing Argila Aff., ECF 88, ¶ 8; Ex. D to Argila Aff., ECF 88-4; Duravcevic Aff., ECF 89, ¶ 39; Ex. FF to Duravcevic Aff., ECF 89-10). Defendants do not contest that Defendant Raja, as President of Defendant S&N Builders, executed Letters of Assent for only six NYCHA projects, "Various Development Site Wide Specific, Various Development

---

[4] The Court notes that the referenced checks are all from Defendant S&N Builders, but the Court is unable to independently discern who signed each check on behalf of Defendant S&N Builders as the signature line simply reads "Authorized Signature" rather than the name of Defendant Raja or another company agent. *See* Exs. L–Q, V to Argila Aff., ECF 88-12, 88-13, 88-14, 88-15, 88-16, 88-17, 88-22.

[5] The PLA was "entered into by NYCHA . . . and the signatory affiliated Local Unions," including Local 1, to "provide for the cost efficient, safe, quality, and timely completion of certain rehabilitation and renovation work." Ex. C to Argila Aff., ECF 88-3, at 1, 2.

Citywide, Sotomayor Houses, Monroe Houses, Morris Houses[,] and Ingersoll Houses[,] and that S&N performed work at those projects." Defs. Counter-56.1, ECF 94, ¶ 11. In addition, "[t]he PLA was applicable to each of the NYCHA projects at issue in this action." Defs. 56.1, ECF 94-2, ¶ 5 (citing Argila Aff., ECF 88, ¶¶ 5–11); Pls. Counter-56.1, ECF 93-1, ¶¶ 3–5.[6]

While Plaintiffs contend that the PLA incorporates Plaintiffs' collective bargaining agreements ("CBAs"), Defendants only admit that the PLA provides that Defendant S&N Builders "[a]grees to be bound by the legally established collective bargaining agreements and local trust agreements as set forth in the Project Labor Agreement and this Agreement but only to the extent of Program Work and as required by the PLA." Defs. Counter-56.1, ECF 94, ¶ 13 (quotation marks omitted); Pls. 56.1, ECF 87-1, ¶ 13 (citing Argila Aff., ECF 88, ¶¶ 6, 8–10; Ex. C to Argila Aff, ECF 88-3, art. 2(4); Ex. D to Argila Aff., ECF 88-4); *see also* Defs. 56.1, ECF 94-2, ¶ 9; Pls. Counter-56.1, ECF 93-1, ¶ 9. Defendant Raja did not execute a CBA or local trust agreement in his individual capacity. Defs. 56.1, ECF 94-2, ¶ 10; Pls. Counter-56.1, ECF 93-1, ¶ 10.

For the NYCHA projects, Defendant S&N Builders "submitted signed certified payroll records to NYCHA" and each included either a statement certifying "'that the above information represents wages and supplemental benefits paid to all persons employed by my firm for construction work on the above project during the period

[6] At oral argument, the parties agreed that the discrepancy between the six versus seventeen NYCHA projects at issue is not a material dispute as this discrepancy stems from a distinction between projects and locations, respectively. The delinquency at issue concerns "six projects," and the "auditor's summary . . . only cites to the six projects." Hr'g Tr., ECF 97, at 41:8–9; *see id.* at 41:20–23 (Defendants' counsel noting that the "17 versus 6" is "just semantics" and not "a material fact" because Plaintiffs are "only claiming six projects where the benefits were past due); *id.* at 42:6–11 (Plaintiffs' counsel concurring).

shown'" or a box that is checked off that states, "'[i]n addition to the basic hourly wage rates paid to each laborer or mechanic, listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees.'" Pls. 56.1, ECF 87-1, ¶ 12 (quoting Duravcevic Aff., ECF 89, ¶ 40 (quoting Ex. FF to Duravcevic Aff., ECF 89-10)); Defs. Counter-56.1, ECF 94, ¶ 12. The payroll reports submitted by Defendant S&N Builders "set forth the name of the employees working on the NYCHA projects, the worker classification, the hours worked that week and the applicable rate of pay." Defs. 56.1, ECF 94-2, ¶ 11 (citing Raja Affirmation, ECF 94-3, ¶ 12; Ex. A to Raja Affirmation, ECF 94-4; Duravcevic Aff., ECF 89, ¶ 40; Ex. FF to Duravcevic Aff., ECF 89-10); *see* Pls. Counter-56.1, ECF 93-1, ¶ 11 (clarifying that the exhibits cited are samples, not a representation of all payroll reports for all work performed by Defendant S&N Builders, and that Plaintiffs' auditor "issued several audits with scope limitations due to their inability to review the full set of certified payroll records"). These payroll reports were submitted "for[] Sakander Raja" as "President" of Defendant S&N, but signed by Defendant S&N Builders' project manager, Deven Butala. Ex. FF to Duravcevic Aff., ECF 89-10, at ECF pp. 2, 3, 6, 15 (capitalization altered); *see* Defs. 56.1, ECF 94-2, ¶ 17 (citing Ex. FF to Duravcevic Aff., ECF 89-10; Ex. A to Raja Affirmation, ECF 94-4); Pls. Counter-56.1, ECF 93-1, ¶ 17. The payroll reports also include a certification that "I, Sakander Raja[,] President" "do hereby state" that "I pay or supervise the payment of the persons employed by S & N Builders, Inc." Ex. FF to Duravcevic Aff., ECF 89-10, at ECF pp. 5, 8, 10, 12, 14. This certification is also signed by Deven Butala "[f]or Sakander Raja, President." *Id.*

Pursuant to the CBAs, "the employer must submit monthly employer remittance reports setting out the hours worked by its employees and the amount of contributions

and dues and assessments due for each employee, which 'shall be remitted by Employer not later than the fifteenth (15th) day of the following month.'" Pls. 56.1, ECF 87-1, ¶ 17 (quoting Argila Aff., ECF 88, ¶ 16; 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, art. XV, at 27 (providing that "[a] monthly report on a form prepared by the Trustees shall be remitted by each Employer not later than the fifteenth (15th) day of the following month"); 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, art. XV, at 28 (same)); Defs. Counter-56.1, ECF 94, ¶ 17. Under the CBAs, these "remittance reports must be submitted each month regardless of whether the employer performed work covered by the CBAs for that month." Pls. 56.1, ECF 87-1, ¶ 17 (citing Argila Aff., ECF 88, ¶ 16; 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, art. XV, at 27; 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, art. XV, at 28); Defs. Counter-56.1, ECF 94, ¶ 17. Additionally, the PLA provides:

> [T]he Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work done under this Agreement and only for those employees to whom this Agreement requires such benefit payments.

Pls. 56.1, ECF 87-1, ¶ 19 (quoting PLA, Ex. C to Argila Aff., ECF 88-3, at 25) (citing Argila Aff., ECF 88, ¶¶ 10–11; Ex. D to Argila Aff, ECF 88-4); Defs. Counter-56.1, ECF 94, ¶ 19 (admitting that this language appears in the PLA). Moreover, pursuant to the Trust Agreements, "a) the 'assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers,'" and "b) 'all contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary.'" Pls. 56.1, ECF 87-1, ¶ 20 (quoting Argila Aff., ECF 88, ¶ 25 (internal

quotation marks omitted)) (citing Exs. F–I of Argila Aff., ECF 88-6, 88-7, 88-8, 88-9, art. II, § 2, art. III, § 3); Defs. Counter-56.1, ECF 94, ¶ 20. The CBAs further provide that "'[t]he Employer recognizes that once the contributions become due and owing to the Fringe Benefit Funds, the contributions are assets of the Fringe Benefit Funds, and Employer acts as a fiduciary of those fund assets until they are paid over to the Fringe Benefit Funds.'" Pls. 56.1, ECF 87-1, ¶ 21 (quoting Argila Aff., ECF 88, ¶ 26 (citing Exs. A–B to Argila Aff., ECF 88-1, 88-2, art. XV(7)(e)); Defs. Counter-56.1, ECF 94, ¶ 21.

Defendants "submitted periodic payment requisitions to NYCHA which attached the certified payroll reports." Defs. 56.1, ECF 94-2, ¶ 15 (citing Raja Affirmation, ECF 94-3, ¶ 11; Ex. A to Raja Affirmation, ECF 94-4); Pls. Counter-56.1, ECF 93-1, ¶ 15 (noting that "S&N does not specify when exactly they submitted the periodic payment requisitions or that such requisitions were timely" (quotation marks omitted)). Additionally, Defendant S&N submitted "remittance reports to Plaintiffs setting forth the Local No. 1 employee hours worked and the contributions payable pursuant to the PLA." Defs. 56.1, ECF 94-2, ¶ 16 (citing Raja Affirmation, ECF 94-3, ¶ 14; Ex. B to Raja Affirmation, ECF 94-5); Pls. Counter-56.1, ECF 93-1, ¶ 16 (clarifying that the evidence presented does not "establish that S&N submitted remittances each month or when exactly they were submitted"). As noted above, at least some of these certified payroll reports were signed by Defendant S&N's project manager, Deven Butala. Defs. 56.1, ECF 94-2, ¶ 17 (citing Ex. FF to Duravcevic Aff., ECF 89-10; Ex. A to Raja Affirmation, ECF 94-4); Pls. Counter-56.1, ECF 93-1, ¶ 17 (clarifying that the proffered exhibits are a sample and not a representation of all certified payroll reports for all work performed by Defendant S&N on NYCHA projects).

The PLA "allowed Plaintiffs to designate a working journey person as shop steward for the NYCHA projects" and "provided that the shop steward would have the

right to receive employee complaints or grievances and assist in their adjustment with the contractor's appropriate supervisor." Defs. 56.1, ECF 94-2, ¶¶ 12–13; Pls. Counter-56.1, ECF 93-1, ¶¶ 12–13. While Defendants contend that "[f]or all NYCHA projects performed by S&N, Local No. 1 had a shop steward present who maintained his/her own record of hours worked," Defs. 56.1, ECF 94-2, ¶ 14, Plaintiffs admit only "that there were shop stewards on at least some of S&N's NYCHA projects, as the auditor did review some shop steward reports in connection with the audit for the period January 1, 2016 through March 31, 2019," Pls. Counter-56.1, ECF 93-1, ¶ 14 (citing Duravcevic Aff., ECF 89, ¶¶ 8, 13). Moreover, the PLA provides that:

> To the extent consistent with procurement regulations of the United States Department of Housing and Urban Development, and in consideration of the unions' waiver of their rights to withhold labor from a contractor or subcontractor delinquent in the payment of fringe benefits contributions ("Delinquent Contractor"); NYCHA agrees that where any such union and/or fringe benefit fund shall notify NYCHA, the General Contractor, and the Delinquent Contractor in writing with back-up documentation that the Delinquent Contractor has failed to make fringe benefit contributions to it as provided herein and the Delinquent Contractor shall fail, within ten (10) calendar days after receipt of such notice, to furnish either proof of such payment or notice that the amount claimed by the union and/or fringe benefit fund is in dispute, NYCHA shall withhold from amounts then or thereafter becoming due and payable to the General Contractor an amount equal to that portion of such payment due to the General Contractor that relates solely to the work performed by the Delinquent Contractor which the union or fringe benefit fund claims to be due it, and shall remit the amount when and so withheld to the fringe benefit fund and deduct such payment from the amounts then otherwise due and payable to the General Contractor, which payment shall, as between the General Contractor and NYCHA, be deemed a payment by NYCHA to the General Contractor; provided however, that in any month, such withholding shall not exceed the amount contained in the General Contractor's monthly invoice for work performed by the Delinquent Contractor. The union or its employee benefit funds shall include in its notification of delinquent payment of fringe benefits only such amount it asserts the Delinquent Contractor failed to pay on the specific project against which the claim is made and the union or its employee benefit funds may not include in such notification any amount such Delinquent Contractor may have failed to pay on any other NYCHA or non-NYCHA project.

Defs. 56.1, ECF 94-2, ¶ 18 (quoting Ex. C to Argila Aff., ECF 88-3, art. 11, § 2(C)) (emphasis omitted); Pls. Counter-56.1, ECF 93-1, ¶ 18. Furthermore, the PLA also states:

> In the event the General Contractor or Delinquent Contractor shall notify NYCHA as above provided that the claim of the union or fringe benefit fund is in dispute, NYCHA shall withhold from amounts then or thereafter becoming due and payable to the General Contractor an amount equal to that portion of such payment due to the General Contractor that relates solely to the work performed by the Delinquent Contractor which the union and/or fringe benefit fund claims to be due it, and deposit such amount when and so withheld in a separate interest-bearing account pending resolution of the dispute pursuant to the union's Schedule A agreement, and the amount so deposited together with the interest thereon shall be paid to the party or parties ultimately determined to be entitled thereto, or held until the Delinquent Contractor and union or fringe benefit fund shall otherwise agree as to the disposition thereof; provided however, that such withholding shall not exceed the amount contained in the General Contractor's monthly invoice for work performed by the Delinquent Contractor.

Defs. 56.1, ECF 94-2, ¶ 19 (quoting Ex. C to Argila Aff., ECF 88-3, art. 11, § 2(D)) (emphasis omitted); Pls. Counter-56.1, ECF 93-1, ¶ 19.

In a letter dated January 5, 2023, Plaintiffs "notified NYCHA of an alleged delinquency of $693,602.83 on various projects and attached a spreadsheet detailing the delinquencies for each project," quoting "Article 11, Section 2(C) of the PLA in requesting that NYCHA withhold monies against the projects." Defs. 56.1, ECF 94-2, ¶ 20 (citing Raja Affirmation, ECF 94-3, ¶ 30; Ex. C to Raja Affirmation, ECF 94-6); Pls. Counter-56.1, ECF 93-1, ¶ 20. NYCHA withheld the money as requested by Plaintiffs. Defs. 56.1, ECF 94-2, ¶ 21 (citing Raja Affirmation, ECF 94-3, ¶ 30); Pls. Counter-56.1, ECF 93-1, ¶ 21. On October 19, 2023, NYCHA issued payment to Plaintiffs in the amount of $723,813.21, and on February 13, 2025, issued an additional payment of $237,003.77. Defs. 56.1, ECF 94-2, ¶ 22 (citing Argila Aff., ECF 88, ¶ 57; Ex. R to Argila

Aff., ECF 88-18; Ex. S to Argila Aff., ECF 88-19[7]); Pls. Counter-56.1, ECF 93-1, ¶ 22 (adding citation to Argila Aff., ECF 88, ¶ 67).

In 2019, Plaintiffs engaged an auditor to conduct an audit of Defendant S&N Builders' projects. Pls. 56.1, ECF 87-1, ¶ 22 (citing, *inter alia*, Duravcevic Aff., ECF 89, ¶¶ 7, 22–24). For the audit period spanning from January 1, 2016, through March 31, 2019 (the "'19–'21 Audit Period"), Plaintiffs' auditor, Kobgo, issued an audit report on February 26, 2021, "showing a delinquency in the amount of $491,991.02 for work performed on various NYCHA Projects." Pls. 56.1, ECF 87-1, ¶ 23 (citing Duravcevic Aff., ECF 89, ¶¶ 7–13; Ex. Y to Duravcevic Aff., ECF 89-3); Defs. Counter-56.1, ECF 94, ¶ 23 (noting that "Defendants are without knowledge to either admit or deny"); *cf.* Defs. 56.1, ECF 94-2, ¶ 28 (noting that the February 26, 2021 audit "identified $157,247.48 in allegedly past due Pointers contributions for the period July 1, 2015 to June 30, 2016 and $201,450.58 for the period July 1, 2016 to June 30, 2017"); Pls. Counter-56.1, ECF 93-1, ¶ 28 (denying Defendants' statement, and specifying that if Defendants are only tallying amounts due to Pointers, then the correct amount "for the July 1, 2015 to June 30, 2016 period is $164,949.94 and for the July 1, 2016 through June 30, 2017 period is $211,321.57"). Following the February 26, 2021 audit report, Defendant S&N worked with Plaintiffs to "negotiate a settlement of sums claimed due and made periodic payment[s] in furtherance of those negotiations" in order to attempt to resolve the delinquency identified in the audit report. Pls. 56.1, ECF 87-1, ¶ 24; Defs. Counter-56.1,

---

[7] The Court notes that Exhibit S to the Argila Affidavit indicates that the February 13, 2025 NYCHA payment noted in Defendants' Rule 56.1 statement appears to have in fact paid on February 3, 2025. *Compare* Defs. 56.1, ECF 94-2, ¶ 22 (asserting that NYCHA issued an additional payment "on February 13, 2025") *with* Ex. S to Argila Aff., ECF 88-19 (NYCHA checks indicating a payment date of February 3, 2025).

ECF 94, ¶ 24. More specifically, Defendant "S&N submitted check no. 13909, dated March 17, 2021, in the amount of $49,118.45, as well as checks in April, June, July, and August 2021, each in the amount of $38,246.75." Pls. 56.1, ECF 87-1, ¶ 25 (citing Argila Aff., ECF 88, ¶¶ 38, 40; Ex. L to Argila Aff., ECF 88-12; Ex. M to Argila Aff., ECF 88-13); Defs. Counter-56.1, ECF 94, ¶ 25. Following a meeting in April 2025, Defendant S&N submitted objections and supporting documentation to the audit report for the '16–'19 Audit Period. Pls. 56.1, ECF 87-1, ¶ 51; Defs. Counter-56.1, ECF 94, ¶ 51. Following the objections, on July 10, 2025, Kobgo issued a revised audit report for the '16-'19 Audit Period, "which revealed a revised delinquency of $433,522.97 and, after application of various payments, a net delinquency of $21,737.22"; Defendant S&N paid the remaining delinquency on July 16, 2025, leaving a balance of $0.00 for the '16–'19 Audit Period. Pls. 56.1, ECF 87-1, ¶ 52; Defs. Counter-56.1, ECF 94, ¶ 52.

At the end of 2021 and into the beginning of 2022, Kobgo and Plaintiffs began working with Defendant S&N and NYCHA to obtain records for the audit period spanning from April 1, 2019, through March 19, 2023 (the "'19–'23 Audit Period"). Pls. 56.1, ECF 87-1, ¶¶ 22, 26; Defs. Counter-56.1, ECF 94, ¶¶ 22, 26. On January 12, 2022, Kobgo issued a Delinquency and Omissions Schedule ("Delinquency Schedule") for Defendant S&N "for the period March 29, 2021 through November 21, 2021, showing a delinquency due and owing to the Funds in the amount of $728,918.32" for four NYCHA projects, which was provided to Defendant S&N. Pls. 56.1, ECF 87-1, ¶ 27; Defs. Counter-56.1, ECF 94, ¶ 27. Defendant S&N and Plaintiffs attempted to reach a global resolution for the delinquencies identified in the February 26, 2021 audit report and the Delinquency Schedule; however, "settlement terms were never agreed upon and no settlement agreement was ever entered into by the parties." Pls. 56.1, ECF 87-1, ¶ 28; Defs. Counter-56.1, ECF 94, ¶ 28. Nevertheless, between September 2021 and May

2023, Defendant S&N submitted eleven payments towards the deficiencies. Pls. 56.1, ECF 87-1, ¶¶ 29 (citing Argila Aff., ECF 88, ¶ 45; Ex. N to Argila Aff., ECF 88-14), 31, 35, 39; Defs. Counter-56.1, ECF 94, ¶¶ 29, 31, 35, 39.

According to Plaintiffs, on May 16, 2023, Kobgo issued an audit report of Defendant S&N for the '19–'23 Audit Period, which showed "a delinquency of $1,125,249.18, plus audit costs of $11,950.00." Pls. 56.1, ECF 87-1, ¶ 38; Defs. Counter 56.1, ECF 94, ¶ 38 (noting that "Defendants are without knowledge to either admit or deny"); *cf.* Defs. 56.1, ECF 94-2, ¶ 30 (stating that the May 16, 2023 audit "revealed an alleged delinquency of $1,125,249.18") (citing Duravcevic Aff., ECF 89, ¶ 24; Ex. BB to Duravcevic Aff., ECF 89-6); Pls. Counter-56.1, ECF 93-1, ¶ 30. Defendant S&N submitted objections to the '19–'23 audit report; following a review of the objections, Kobgo issued a revised audit report on October 24, 2023, "which revealed a revised delinquency of $331,444.74 and, after application of two payments . . . , a net delinquency of $210,322.51, plus audit costs of $14,275.00." Pls. 56.1, ECF 87-1, ¶ 41; Defs. Counter-56.1, ECF 94, ¶ 41; *see also* Defs. 56.1, ECF 94-2, ¶¶ 31–32; Pls. Counter-56.1, ECF 93-1, ¶¶ 31–32. However, Defendant S&N Builders provided objections to the revised audit report as well, and on May 3, 2024, Kobgo issued a further revised audit of the '19–'23 Audit Period, "which revealed a revised delinquency of $323,302.19, and a net delinquency of $202,179.96, plus $16,450.00 in audit costs." Pls. 56.1, ECF 87-1, ¶ 44; Defs. Counter-56.1, ECF 94, ¶ 44. Defendant S&N submitted additional objections, and Kobgo issued another revised audit report on November 11, 2025, "which revealed a revised delinquency of $318,180.43, and a net delinquency of $4,446.34," in addition to audit costs. Pls. 56.1, ECF 87-1, ¶ 53; Defs. Counter-56.1, ECF 94, ¶ 53. However, as detailed in Defendants' 56.1 statement, and not disputed by Plaintiffs, "[a]ll contributions claimed due by Plaintiffs under the Second Amended Complaint have been paid in full." Defs.

56.1, ECF 94-2, ¶ 40; Pls. Counter-56.1, ECF 93-1, ¶ 40; *see* Hr'g Tr., ECF 97, at 3:3–4:2 (Plaintiffs' counsel confirming at the oral argument that "there are no contributions due and owing").

Defendants S&N Builders and Raja have "not paid any interest, liquidated damages, audit costs, or attorney's fees and expenses associated with the delinquencies as demanded by Plaintiffs." Pls. 56.1, ECF 87-1, ¶ 54; Defs. Counter-56.1, ECF 94, ¶ 54. Plaintiffs contend that the total damages amount is $915,237.42, which consists of (1) "remaining unpaid contributions, dues and assessments in the amount of $4,446.33"[8]; (2) "interest on the delinquent contributions for the '16-'19 Audit Period in the amount of $246,934.96, and for the '19-'23 Audit Period in the amount of $74,186.55"; (3) "interest on the dues and assessments for the '16-'19 Audit Period in the amount of $16,608.20, and for the '19-'23 Audit Period in the amount of $6,401.47"; (4) "additional interest on the contributions in the amount of $321,121.51 (since that amount is greater than 20% liquidated damages on the contributions)"; (5) "audit costs in the amount of $35,120.00"; (6) "attorney's fees in the amount of $209,639.50"; and (7) "costs and expenses in the amount of $778.91." Pls. 56.1, ECF 87-1, ¶ 56. *But see* Defs. Counter-56.1, ECF 94, ¶ 56 (asserting that "Defendants are without knowledge to either admit or deny other than to deny that there are remaining unpaid contributions, dues and assessments in the amount of $4,446.33").

[8] As noted above, however, Plaintiffs have since acknowledged that there is no outstanding delinquency based on unpaid contributions. Defs. 56.1, ECF 94-2, ¶ 40; Pls. Counter-56.1, ECF 93-1, ¶ 40; Hr'g Tr., ECF 97, at 3:3–4:2 (Plaintiffs' counsel confirming that "there are no contributions due and owing").

## II. Procedural History

As noted above, Plaintiffs initiated this action on June 6, 2022. *See generally* Compl., ECF 1. On July 22, 2022, Defendants filed an answer to the complaint. *See generally* Answer, ECF 14.[9]

On October 25, 2023, the parties filed a motion requesting a settlement conference before the Court. Joint Mot. for Hr'g, ECF 36. Following a pre-settlement status conference, however, the Court directed the parties to continue settlement discussions amongst themselves, including any further analysis of the revised audit report. Nov. 1, 2023 ECF Min. Entry & Order. The parties were unable to resolve the matter through settlement and proceeded with discovery. Status Report, ECF 42; June 25, 2024 ECF Order.

On November 15, 2024, with leave of court, Plaintiffs filed a second amended complaint. *See* Second Am. Compl., ECF 53; Nov. 13, 2024 ECF Order. On August 1, 2025, Plaintiffs filed a motion for a pre-motion conference, requesting leave to file a motion for summary judgment against Defendants S&N Builders and Raja. Pls. Mot. for Pre-Mot. Conference, ECF 76. On August 12, 2025, Defendants S&N Builders and Raja also filed a motion for a pre-motion conference, requesting leave to file a motion for summary judgment against Plaintiffs. Defs. Mot. for Pre-Mot. Conference, ECF 77. On September 9, 2025, the Court held a pre-motion conference regarding the anticipated motions for summary judgment and set a briefing schedule for the parties' respective motions. Sept. 9, 2025 ECF Min. Entry & Order. Following numerous extensions of the

[9] On July 29, 2022, the parties consented to magistrate judge jurisdiction. *See* Consent to Jurisdiction, ECF 16; Consent to Jurisdiction, ECF 17.

deadline to submit the parties' motions, on March 9 and 10, 2026, the parties filed their bundled motion papers. *See* Pls. Mot., ECF 87; Defs. Mot., ECF 94; *see generally* Docket.

On March 10, 2026, Plaintiffs filed a letter asserting that Defendants' reply memorandum violates Local Rule 7.1(c) and impermissibly raises new issues. Pls. Letter, ECF 95. The Court scheduled a conference to discuss. Mar. 11, 2026 ECF Scheduling Order. At the conference, the Court took the parties' motions and associated papers under advisement as filed and noted Plaintiffs' objection. Mar. 18, 2026 ECF Min. Entry & Order.

On September 15, 2026, the Court held oral argument on the parties' motions for summary judgment. *See* Sept. 15, 2026 ECF Min. Entry & Order; Hr'g Tr., ECF 97; *see also* Sept. 4, 2026 ECF Scheduling Order. Following the hearing, the Court permitted the parties to "provide supplemental authority concerning the issues discussed at the hearing." Sept. 15, 2026 ECF Min. Entry & Order. On September 22, 2026, both parties filed letters providing supplemental authority. *See* Defs. Letter, ECF 98; Pls. Letter, ECF 99.

## DISCUSSION

### I. Legal Standard: Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The Court must "view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].").

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c)(1) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Lener v. Hempstead Pub. Schs.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When determining whether a movant is entitled to summary judgment, courts do not weigh the evidence or make credibility determinations to decide the truth of the matter, but instead assess "'whether there is a genuine issue for trial.'" *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (quoting *Anderson*, 477 U.S. at 249, 255). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020) (quotation marks omitted).

Cross-motions for summary judgment are examined using the same standards, and the court's role is to "determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021); *see Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Accordingly, the court must examine each party's motion "on its own merits" and draw "all reasonable inferences . . . against the party whose motion is under consideration." *Morales*, 249 F.3d at 121.

**II. Analysis**

Here, Plaintiffs move for summary judgment to recover "the principal amount due under the audits," along with "any interest, liquidated damages, audit costs, or attorney's fees and expenses associated with the delinquencies as demanded by

Plaintiffs." Pls. Mem., ECF 91, at 7. In particular, Plaintiffs argue that Defendant S&N Builders "is bound to the PLA which incorporates the CBAs, as evidenced by the Letters of Assent and the fact that S&N performed work on the PLAs"; further, "[p]er the CBAs and Trust Agreements, contributions that are due and owing to the Funds are assets of the Funds for which the employer is responsible as a fiduciary until the time they are paid over to the Funds." *Id.* at 8–9. Moreover, Plaintiffs argue that because Defendant Raja (1) "executed labor and material payment bonds as principal of S&N"; (2) directed the submission of certified payroll records to NYCHA; and (3) "signed checks on behalf of S&N for payment of contributions, dues, and assessments," he is personally liable as an ERISA fiduciary. *Id.* at 9; *see id.* at 14. Plaintiffs contend that, in light of the undisputed material facts, they are entitled to an entry of summary judgment against both Defendants S&N Builders and Raja for the requested sums.

Defendants oppose Plaintiffs' motion for summary judgment and cross-move for summary judgment. Defendants argue that "Plaintiffs have waived any right against either S&N or Raja to recover . . . as a result of their own failure to mitigate the very damages they now seek to recover." Defs. Mem., ECF 94-7, at 7. Defendants also contend that Defendant Raja "is not an ERISA fiduciary" and cannot be held individually liable. *Id.* at 3.

**A. ERISA Violations**

The parties do not dispute that the executed Letters of Assent provided that Defendant S&N agreed "to be bound by the legally established collective bargaining agreements and local trust agreements as set forth in the" PLA, "but only to the extent of Program Work and as required by the PLA." Defs. 56.1, ECF 94-2, ¶ 9; Pls. Counter-56.1, ECF 93-1, ¶ 9; *see also* Defs. Mem., ECF 94-7, at 4–5. However, Plaintiffs allege that Defendant S&N, an employer bound by the CBAs, violated ERISA by failing to make

required contributions to the ERISA Funds, and that Defendant Raja is liable as a fiduciary.

Under Section 515 of ERISA:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce Section 515, "the court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions [and] liquidated damages" according to the "rate provided under the plan").

Moreover, under ERISA:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]

29 U.S.C. § 1109(a). The statute explains that "a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" *Id.* § 1002(21)(A). To hold Defendant Raja personally liable as a fiduciary, Plaintiffs must demonstrate "both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009); *see Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare*

*Fund v. Harbor Island Contracting, Inc.* (“*Harbor Island Contracting*”), No. 13-CV-6075 (MKB) (RER), 2015 WL 1245963, at *3 (E.D.N.Y. Mar. 16, 2015).

*1. Defendant S&N Builders*

Here, the undisputed facts demonstrate that Defendant S&N Builders employed union members as defined by ERISA, *see* Ex. FF to Duravcevic Aff., ECF 89-10 (showing that Defendant S&N Builders employed workers with “Pointers Caulkers and Cleaners” indicated as their work classification (capitalization altered)); the Plaintiffs are trustees and fiduciaries of the Funds, which are multiemployer plans, as defined by ERISA, *see* Pls. 56.1, ECF 87-1, ¶ 1; and Defendant S&N Builders agreed to the terms of the CBAs that require employers to remit contributions to these plans, *see* Defs. 56.1, ECF 94-2, ¶ 9; Pls. Counter-56.1, ECF 93-1, ¶ 9; *see also* Defs. Mem., ECF 94-7, at 4–5. Plaintiffs contend that Defendant S&N Builders failed to remit contributions for the period from January 1, 2016, through March 19, 2023, as demonstrated through audit examinations conducted by Kobgo. *See* Pls. Mem., ECF 91, at 12. Plaintiffs contend that, as evidenced by the July 10, 2025 revised audit report for the ’16–’19 Audit Period, Defendant “S&N failed to timely pay contributions, dues and assessments to the Funds and Local 1 for work performed by its employees . . . in the amount of $433,522.97.” *Id.*; *see* Pls. 56.1, ECF 87-1, ¶ 52; Defs. Counter-56.1, ECF 94, ¶ 52; *see also* July 10, 2025 Kobgo Revised Audit, Ex. Z to Duravcevic Aff., ECF 89-4, at ECF p. 2 (noting that “[a] complete set of weekly certified payroll records were requested but not made available for review”). Following the application of various payments provided by Defendant S&N Builders and other parties, *see, e.g.*, Exs. L–N to Argila Aff., ECF 88-12, 88-13, 88-14 (checks supplied by Defendant S&N); *see* Ex. Z to Duravcevic Aff., ECF 89-4, at ECF p. 2, a net delinquency of $21,737.22 remained, Pls. 56.1, ECF 87-1, ¶ 52; Defs. Counter-56.1, ECF 94, ¶ 52. It is uncontested that Defendant “S&N paid the remaining

delinquency on July 16, 2025, leaving a principal balance of $0.00 for the '16–'19 Audit Period." Pls. 56.1, ECF 87-1, ¶ 52 (citing Argila Aff., ECF 88, ¶¶ 75–76; Morgan Decl., ECF 90, ¶ 53); Defs. Counter-56.1, ECF 94, ¶ 52.

As for the '19–'23 Audit Period, Plaintiffs contend that, as evidenced by the November 11, 2025 revised audit report, Defendant "S&N failed to timely pay contributions, dues and assessments to the Funds and Local 1 for work performed by its employees during the '19–'23 Audit Period in the amount of $318,180.43." Pls. Mem., ECF 91, at 12; *see* Pls. 56.1, ECF 87-1, ¶ 53; Defs. Counter-56.1, ECF 94, ¶ 53; *see also* Nov. 11, 2025 Kobgo Revised Audit, Ex. EE to Duravcevic Aff., ECF 89-9, at ECF p. 3 (noting that "[a] complete set of weekly certified payroll records were requested but not made available for review"). Following the application of various payments provided by Defendant S&N Builders, NYCHA, and the surety, *see* Ex. EE to Duravcevic Aff., ECF 89-9, at ECF pp. 3–4, a net delinquency of $4,446.34 remained, Pls. 56.1, ECF 87-1, ¶ 53; Defs. Counter-56.1, ECF 94, ¶ 53. Defendants admit that the Kobgo audit reports reflect a net delinquency of $21,737.22 for the '16–'19 Audit Period and $4,446.34 for the '19–'23 Audit Period, and posit that the delinquency for the '16–'19 Audit Period was paid in full. Defs. Counter-56.1, ECF 94, ¶¶ 52–53. The parties now agree that "[a]ll contributions claimed due by Plaintiffs under the Second Amended Complaint have been paid in full." Defs. 56.1, ECF 94-2, ¶ 40 (citing Raja Affirmation, ECF 94-3, ¶¶ 24, 35); Pls. Counter-56.1, ECF 93-1, ¶ 40; Hr'g Tr., ECF 97, at 3:3–4:2.

On summary judgment, Defendants do not contest the methodology used for the audit reports, nor the delinquencies reported therein. Defs. Counter-56.1, ECF 94, ¶¶ 52–53; *see Cement and Concrete Workers Dist. Council Welfare Fund v. Super. Gunite*, 742 F. Supp. 3d 309, 315–16 (E.D.N.Y. 2024) (finding no genuine dispute of material fact that the defendant was liable to the plaintiffs under ERISA because, *inter alia*, the defendant

"does not dispute that the relevant contractual provisions . . . bound the parties during the audit period or that the plaintiffs conducted the audit, nor does it challenge the auditor's methodology"). Defendants also supply no underlying evidence to support the assertion that Defendant "S&N submitted monthly remittance reports to Plaintiffs." Defs. 56.1, ECF 94-2, ¶ 16 (citing Raja Affirmation, ECF 94-3, ¶ 14; Ex. B to Raja Affirmation, ECF 94-5); *see* Pls. Counter-56.1, ECF 93-1, ¶ 16. Rather, the record illustrates that the monthly remittance reports cited by Defendants are simply a "sample of a monthly remittance report for the Ingersoll project." Raja Affirmation, ECF 94-3, ¶ 14; *see* Ex. B to Raja Affirmation, ECF 94-5; *see also* Pls. Counter-56.1, ECF 93-1, ¶ 17 (citing Ex. FF to Duravcevic Aff., ECF 89-10 (sampling of payroll reports submitted by Defendant S&N)). Accordingly, the Court finds that there are no genuine disputes as to any material fact regarding the delinquencies identified in the audit reports. *Cf. Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute[;]" rather, "courts are entitled to order litigants to provide specific record citations" in support of their summary judgment arguments). The Court further finds that Defendant S&N Builders' failure to timely remit contributions to the Plaintiffs violated ERISA and the CBAs.

2. *Defendant Raja*[10]

Plaintiffs assert that Defendant Raja is personally liable for the above ERISA violations as a fiduciary of the Funds' assets. Pls. Mem., ECF 91, at 13–15. Defendants contend that Defendant Raja is not a fiduciary, and so cannot be held liable. Defs. Mem., ECF 94-7, at 18–23.

As a threshold matter, it is not meaningfully disputed that the unpaid funds were plan assets. As established above, Defendant S&N was subject to the Trust Agreements. The Trust Agreements provide that: (1) "assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers . . ." and (2) "[a]ll contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary." Exs. F–I to Argila Aff., ECF 88-6, 88-7, 88-8, 88-9, art. II, § 2, art. III, § 3. Moreover, the IFP Trust Agreement further provides that: "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund." May 21, 2003 Amendment, Ex. J to Argila Aff., ECF 88-10, at ECF p. 46. Furthermore, the CBAs state that "[t]he Employer recognizes that once the contributions become due and owing to the Fringe Benefit Funds, the

[10] The parties' papers only set forth arguments regarding whether Defendant Raja is an ERISA fiduciary, not whether he is a fiduciary under the LMRA. The Court notes that "[c]ourts considering whether a plaintiff may hold an individual defendant personally liable for claims brought under the LMRA have applied state law" and that "[u]nder New York law, individual liability is found 'only in rare cases' where there is 'overwhelming evidence of the signatory's intention to assume personal liability.'" *Bldg. Indus. Elec. Contractors Assn. v. Patriot Electric Corp.*, No. 22-CV-7653 (NGG) (RML), 2024 WL 22762, at *9 (E.D.N.Y. Jan. 2, 2024) (quoting *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002) (internal quotation marks omitted)). Accordingly, because the parties only briefed Defendant Raja's fiduciary status under ERISA, the Court does not consider whether Defendant Raja may be a fiduciary under the LMRA.

contributions are assets of the Fringe Benefit Funds, and Employer acts as a fiduciary of those fund assets until they are paid over to the Fringe Benefit Funds." 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, art. XV, § 7(e), at 30–31; 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, art. XV, § 7(e), at 32. While unpaid contributions are generally not considered plan assets, the Second Circuit in *In re Halpin* observed that parties are "free to contractually provide for some other result," as the parties did here. *In re Halpin*, 566 F.3d at 290; *see Sullivan v. M.A.C. Design Corp.*, No. 14-CV-1846 (NGG) (VVP), 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015) (noting that *In re Halpin* "emphasized that parties to an agreement are free to contractually define unpaid contributions otherwise, and that such a contract would trump the default rule") (citing *In re Halpin*, 566 F.3d at 287; *Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10-CV-1371 (KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012)). In *Sullivan*, a case arising under the same CBAs, the court found that the instant language was "sufficient to designate the unpaid employer contributions as plan assets." 2015 WL 5518456, at *2. This reasoning applies with equal force here and Defendants' arguments to the contrary are unavailing. *See* Defs. Mem., ECF 94-7, at 19–20 (discussing *In re Halpin*).[11] Specifically, Defendants

---

[11] Moreover, while Defendants assert that "the action against Raja for solely interest, liquidated damages, attorney's fees and/or auditor fees must be dismissed" because "during the course of this litigation, S&N paid the balance of the outstanding contributions as money was received on the various projects from NYCHA" and "[a]t this point in time, no additional contributions are owed," this argument, too, is unavailing. Defs. Mem., ECF 94-7, at 20. As established above, the CBAs and the Trust Agreements provide that all contributions that are due and owing are deemed to be assets of the Funds, and Defendants provide no case law to support the assertion that payment of the outstanding contributions during the course of litigation somehow nullifies Plaintiffs' contractual entitlement to other forms of relief. *See*

use *In re Halpin* to argue that "[u]npaid employer contributions only become 'plan assets' for ERISA purposes after being paid to the fund." *Id.* at 19. However, Defendants' reading of *In re Halpin* is too narrow. Rather, the Second Circuit found that the "the unpaid employer contributions were not assets of the plans" because the plan documents at issue in that case described the fund assets as "contributions made by Employers"; therefore, because "there is no indication that the parties sought to displace the ordinary presumption that an employer does not become a fiduciary of plan assets simply because it is under a contractual obligation to contribute to an employee benefit fund," the court found that the unpaid contributions were not plan assets under the CBA at issue in that case. *In re Halpin*, 556 F.3d at 290–91 (quotation marks omitted and emphasis in original). Here, however, as established above, the language of the CBAs and trust documents specifically renders the unpaid contributions plan assets. *See Sullivan*, 2015 WL 5518456, at *2. Accordingly, the Court finds that the unpaid contributions and late-paid contributions were plan assets when they became due.

The next question the Court must answer is whether there is a dispute of material fact as to whether Defendant Raja "exercised a level of control over those assets

---

*generally id.*; *cf. Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) (observing that "an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions"); *Argila v. R.Z. United Constr., Inc.*, No. 23-CV-2547 (RPK) (TAM), 2026 WL 388608, at *13 n.18 (E.D.N.Y. Jan. 22, 2026), *report and recommendation adopted*, Feb. 10, 2026 Order Adopting R. & R. ("As the Second Circuit has observed, § 1145 of ERISA requires employers to make plan contributions in accordance with the terms of the plan or applicable CBA, so even when ERISA contributions are paid late, in the event of a judgment in favor of the plan under § 1132(g)(2) of ERISA, the plaintiff is entitled to all the measures of relief not already obtained." (quotation marks omitted)); *Finkel v. Allstate Elec. Corp.*, No. 09-CV-4071 (ENV) (RER), 2010 WL 5558899, at *5 & n.4 (E.D.N.Y. Nov. 24, 2010), *report and recommendation adopted*, 2011 WL 63600 (E.D.N.Y. Jan. 6, 2011).

sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d at 289. The Second Circuit has observed that "Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)). Notwithstanding that principle, it is a functional, rather than a formal, definition. *See Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 881 (S.D.N.Y. 1997). Accordingly, courts assess the actual role a putative fiduciary played, if any, in the management of plan assets (*i.e.*, here, the unpaid contributions).

For example, in *LoPresti*, the Second Circuit reversed the district court, finding that one of the putative fiduciaries — who was a signatory on the company's account, "signed checks on that account, including checks payable to the Funds," and "had a role in determining which bills to pay" — was an ERISA fiduciary, while a second putative fiduciary — who "was authorized to sign checks on the Company's account" and "had some general knowledge that deductions were made from employees' wages" — was not because he was "primarily a production person with no responsibility for determining which of the company's creditors would be paid or in what order." 126 F.3d at 40–41 (quotation marks omitted). Other cases have held similarly. *See, e.g.*, *Harbor Island Contracting*, 2015 WL 1245963, at *3 (finding the complaint's allegations that the individual defendant "held authority to sign checks on behalf of Harbor Island, including checks that should have been submitted to the Funds" and "determined whether Harbor Island would make contributions to the Funds, or use assets of the Funds to pay other obligations or himself" sufficient to find him liable as a fiduciary in default posture); *Gesualdi v. Hardin Contracting, Inc.*, No. 09-CV-2660 (ARR) (JMA), 2010 WL 1048821, at *4 (E.D.N.Y. Feb. 16, 2010) (finding defendant to be individually liable as a fiduciary where he signed dishonored checks without specifying that he was doing

so in a representative capacity), *report and recommendation adopted as modified on other grounds*, 2010 WL 1048818 (E.D.N.Y. Mar. 19, 2010); *see also Messera*, 958 F. Supp. at 881 (collecting cases finding that agents of trustees may be held to be fiduciaries when trustees merely rubber stamp the agents' recommendations).

At the same time, a defendant's status as an officer of a corporate entity alone is insufficient to find that he is an ERISA fiduciary. *See Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (affirming district court's finding that the individual defendant was not a fiduciary where he "was simply an officer of" the corporate defendant, "signed checks on the company's behalf," and "maintained plan assets for the benefit of" himself and his company, but did not "select investments," was not "responsible for determining which of the company's creditors would be paid or in what order," or otherwise was authorized to manage plan assets (cleaned up)).

Here, the undisputed facts in the record establish that Defendant Raja: (1) is the President and Chief Executive Officer of Defendant S&N, *see* Pls. 56.1, ECF 87-1, ¶ 7 (citing Ex. D to Argila Aff., ECF 88-4; Ex. GG to Morgan Decl., ECF 90-1, at ECF p. 2); Defs. Counter-56.1, ECF 94, ¶ 7; (2) signed the payment bonds, with the exception of the bond for one project, as principal of Defendant S&N, *see* Defs. Counter-56.1, ECF 94, ¶ 8 (citing Ex. HH to Morgan Decl., ECF 90-2); (3) executed the Letters of Assent to the PLA, *see* Pls. Counter-56.1, ECF 93-1, ¶ 7; Defs. 56.1, ECF 94-2, ¶ 7 (citing Ex. D to Argila Aff., ECF 88-4); (4) signed some checks for contributions, dues, and assessments, *see* Defs. Counter-56.1, ECF 94, ¶ 8 (citing Exs. L–Q to Argila Aff., ECF 88-12, 88-13, 88-14, 88-15, 88-16, 88-17); (5) had others sign the certified payroll reports "for[] Sakander Raja" as "President" of Defendant S&N, Ex. FF to Duravcevic Aff., ECF 89-10, at ECF pp. 2, 3, 6, 15 (capitalization altered); and (6) had others sign the certifications included in the payroll reports, which stated that "I, Sakander Raja[,] President" "do hereby state" that

"I pay or supervise the payment of the persons employed by S & N Builders, Inc.," *id.* at ECF pp. 5, 8, 10, 12, 14. *See also* Hr'g Tr., ECF 97, at 4:25–5:6 (Plaintiffs' counsel representing that "the undisputed evidence in the record is that [Raja] is the CEO and president of S&N Builders[,] . . . the signatory to the PLA as the president[,] . . . [and] signed checks which establishes his authority and control over the finances of the company"), 6:25–7:3 (Plaintiffs' counsel noting that Raja "obtained payment bonds on behalf of S&N which are meant to guarantee the payment of contributions of this exact sort"), 10:2–7 (Plaintiffs' counsel indicating that the certified payrolls are signed "for Sakander Raja, president"), 10:14–18 (Plaintiffs' counsel highlighting Raja's "signature on the bonds"); *see also id.* at 13:3–13.

The record does not reflect, however, that Defendant Raja signed certified reports on behalf of S&N himself; rather, as stated above, the sample of certified payroll reports provided in the record, although submitted under Raja's name as President of S&N, were signed by Defendant S&N's project manager, Deven Butala. Defs. 56.1, ECF 94-2, ¶ 17 (citing Ex. FF to Duravcevic Aff., ECF 89-10; Ex. A to Raja Affirmation, ECF 94-4); Pls. Counter-56.1, ECF 93-1, ¶ 17 (citing Ex. FF to Duravcevic Aff., ECF 89-10; Ex. A to Raja Affirmation, ECF 94-4); *see also* Pls. Letter, ECF 99, at 2–3. Additionally, as discussed at oral argument, Defendant Raja's affirmation contends that Defendant S&N's "Office Manager handled the monthly remittance reports as well as the communications with Plaintiffs and their auditors," and would also "review the various payment obligations on the projects and make decisions on who to pay and what amounts they would receive based on the amounts received from NYCHA." Raja Affirmation, ECF 92-3, ¶ 34; *see id.* ¶ 23 ("Our Office Manager, Cynthia Sukhram, would review the relevant obligations and make decisions on who to pay and the amounts they would receive."); Hr'g Tr., ECF 97, at 24:12–22, 25:20–24, 26:5–17.

Viewing these facts in the light most favorable to Defendants — as the non-movant on Plaintiff's motion for summary judgment on the issue of whether Defendant Raja is a fiduciary — a reasonable factfinder could find in Defendants' favor. While there is evidence that Defendant Raja may have signed some checks for contributions, dues, and assessments, this does not demonstrate that he had sufficient responsibility over the company's determinations as to paying its creditors to be an ERISA fiduciary under the case law; rather, the record could be interpreted to conclude that, like the non-fiduciary in *LoPresti*, Defendant Raja "had some general knowledge that deductions were made from employees' wages," but was not responsible "for determining which of the company's creditors would be paid or in what order." 126 F.3d at 40 (quotation marks omitted); *see Romanowicz*, 577 F.3d at 86; *see also supra* note 4 (noting that the Court cannot independently discern who signed each check on behalf of Defendant S&N). Additionally, the fact that Defendant Raja signed payment bonds on behalf of Defendant S&N Builders has very little bearing on whether he managed plan assets or otherwise exercised a level of control over such assets such that he was acting as a fiduciary as to ERISA contributions, specifically. *See Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 574–75 (2d Cir. 1995) (observing that a surety bond executed between the parties under the terms of their CBA did not implicate ERISA: "surety law does not touch upon any rights or duties incident to the ERISA plan itself, nor does it conflict with any ERISA cause of action"); *see generally In re Halpin*, 566 F.3d at 289. Moreover, as Defendants highlighted at the hearing, Defendant Raja's affirmation contends that Defendant S&N's Office Manager made the relevant decisions

regarding which creditors were paid and in what order. Raja Affirmation, ECF 92-3, ¶¶ 23, 34.[12]

Conversely, viewing these same facts in the light most favorable to Plaintiffs — as the non-movant as to Defendants' summary judgment claim that Defendant Raja is *not* a fiduciary — a factfinder could conclude that Defendant Raja's overall role, together with his signing of the contributions, dues, and assessment checks, demonstrated "a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d at 289. In-court testimony could further establish the functional level of control Defendant Raja exercised over the plan assets as Defendant S&N's President and CEO, which topics are underdeveloped in the summary judgment record.

---

[12] In the supplemental letter filed on September 22, 2026 following oral argument, Plaintiffs provide three cases in support of their argument that Defendant Raja is an ERISA fiduciary: (1) *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Infinity Mgmt. Corp.* ("*Infinity*"), No. 17-CV-8204 (AKH), 2019 WL 13472372 (S.D.N.Y. Sept. 12, 2019); (2) *Iron Workers Loc. No. 60 Annuity Pension Fund by Robb v. Solvay Iron Works, Inc.* ("*Solvay*"), No. 5:15-CV-54 (BKS/DEP), 2018 WL 2185510 (N.D.N.Y. May 11, 2018); and (3) *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc.* ("*Temperini*"), No. 12-CV-5646 (ILG) (SMG), 2014 WL 2644774 (E.D.N.Y. June 13, 2014). Pls. Letter, ECF 99, at 1–2. Each of these cases, however, is distinguishable. In *Infinity*, the defendant "*sign[ed] all certified payroll records*, which include[d] a certification that the above information represents wages and supplemental benefits paid to all persons employed by [the defendant's] firm for construction work on the above project," and did not identify "any relevant documents bearing [the company's bookkeeper's] name or signature." *Infinity*, 2019 WL 13472372, at *3–4, *4 n.4 (quotation marks omitted and emphasis added). In *Solvay*, the record established that the defendant "had authority and control over [the company's] bank accounts, and that *he paid suppliers to keep them happy*." 2018 WL 2185510, at *9 (emphasis added). Finally, in *Temperini*, the defendant was found to be a fiduciary by virtue of "his role as president, CEO, and [as] *the person who approved and signed the documents related to contributions to the funds*." 2014 WL 2644774, at *4 (emphasis added). As set forth above, the record evidence present in this case, when viewed in the light most favorable to Defendants, does not establish that Defendant Raja exercised "a level of control over those assets sufficient to make him a fiduciary," when considering the fact that Defendant Raja did not sign the certified payroll records himself and attested that others in the company decided which creditors got paid in which order. *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

For these reasons, the Court finds that the summary judgment record evinces a dispute of material fact as to whether Raja was or was not a fiduciary. Consequently, both parties' motions for summary judgment on the issue of Defendant Raja's fiduciary status are denied and this issue is reserved for trial.

**B. Breach of the PLA and the CBA**

As set forth above, Plaintiffs also allege that Defendant S&N Builders breached the PLA, and the CBAs incorporated therein, by failing to timely submit remittance reports.

The LMRA authorizes suits in federal court "for violation[s] of contracts between an employer and a labor organization[13] representing employees." 29 U.S.C. § 185(a); *see also Annuity, Pension, Welfare, Training and Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB) (RML), 2023 WL 7413837, at *2 (E.D.N.Y. Sept. 28, 2023), *report and recommendation adopted*, 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." 29 U.S.C. § 185(b). Under the LMRA, "courts apply common law principles of contract to [CBAs]." *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Manny P. Concrete Co., Inc.*, No. 18-CV-4111 (AJN), 2020 WL 2087678, at *3 (S.D.N.Y. Apr. 30, 2020). In applying the LMRA, courts "enforce obligations in contracts arising through incorporating other contracts by reference." *Id.* (citing *Goodrich Pump & Engine*

[13] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

*Control Sys. v. Int'l Union, United Auto. Aero. & Agric. Implement Workers of Am.*, 723 F. App'x 67, 69–70 (2d Cir. 2018); *75-07 Food Corp. v. Trs. of United Food & Com. Workers Loc. 342 Health Care Fund*, No. 13-CV-5861 (JFB) (ARL), 2014 WL 691653, at *1–3 (E.D.N.Y. Feb. 24, 2014)). Courts commonly find that an employer's violation of a CBA incorporated by reference in a PLA — a "large-scale contract[] common in the construction industry" that is "often signed before construction begins" — can lead to LMRA liability, even if the defendant is not a signatory to the CBA itself, as is the case here. *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 185 (2d Cir. 2012).

Here, Defendant S&N's contractual obligations are contained in "tiers of agreements." *Manny P. Concrete Co.*, 2020 WL 2087678, at *4. Defendants perform work "under project labor agreements . . . , which are collective bargaining agreements (CBAs) between labor organizations and employers that determine workers' wages and benefits." *Id.* at *1. The PLA "incorporate[s] by reference collective bargaining agreements, which in turn incorporate the Funds' trust agreements, regulations, and policies." *Id.* at *4. As set forth above, a PLA "dated January 1, 2015 was entered into between NYCHA and the Building and Construction Trades Council of Greater New York and Vicinity." Defs. 56.1, ECF 94-2, ¶ 3 (citing Ex. C to Argila Aff., ECF 88-3); Pls. Counter-56.1, ECF 93-1, ¶ 3; *see also* Ex. C to Argila Aff., ECF 88-3, at ECF p. 49. The parties agree that Plaintiff Local 1 was a signatory to the PLA and that the "PLA was applicable to each of the NYCHA projects at issue in this action." Defs. 56.1, ECF 94-2, ¶¶ 4–5 (citing Argila Aff., ECF 88, ¶¶ 5–11; Ex. C to Argila Aff., ECF 88-3); Pls. Counter-56.1, ECF 93-1, ¶¶ 4–5. Defendant S&N "was required to execute a Letter of Assent agreeing to be bound by the terms of the PLA" as a precondition to "being awarded each of the NYCHA construction contracts" at issue. Defs. 56.1, ECF 94-2, ¶ 6; Pls.

Counter-56.1, ECF 93-1, ¶ 6; *see also* Defs. 56.1, ECF 94-2, ¶ 7 (noting that the "Letters of Assent for the NYCHA projects were executed by" Defendant Raja as President of Defendant S&N). Each of these letters of assent provided that Defendant S&N "'[a]grees to be bound by the legally established collective bargaining agreements and local trust agreements as set forth in the Project Labor Agreement and this Agreement but only to the extent of Program Work and as required by the PLA." Defs. 56.1, ECF 94-2, ¶ 9 (Ex. D to Argila Aff., ECF 88-4); Pls. Counter-56.1, ECF 93-1, ¶ 9. The PLA incorporates the CBAs and, together, the PLA and CBAs represent "the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to this Program Work, in whole or in part." Ex. C to Argila Aff., ECF 88-3, art. 2, § 4, at ECF p. 11. Here, it is undisputed that Defendant S&N, through Defendant Raja, signed various Letters of Assent to the PLA, which incorporate by reference the CBAs and local trust agreements set forth in the PLA. Therefore, "[i]n addition to being bound by the terms of the" PLA, Defendant S&N is "*also* bound by these other contracts" — "[i]n short, assent to a PLA brings with it myriad contractual obligations." *Manny P. Concrete Co.*, 2020 WL 2087678, at *4.

The PLA's terms provide that "[c]ontractors agree to pay on a timely basis contributions on behalf of all employees covered by [the PLA] to those established jointly trusteed employee benefit funds." Ex. C to Argila Aff., ECF 88-3, art. 11, § 2(A), at ECF pp. 31–32; *see* Pls. 56.1, ECF 87-1, ¶ 14; *cf.* Defs. Counter-56.1, ECF 94, ¶ 14 (contending that Plaintiffs' assertion regarding the terms of the PLA "is not one of material facts, but rather a conclusion of law"). In turn, the CBAs provide that an employer — in this case, Defendant S&N — is required to make contributions to Plaintiffs' funds and to timely submit remittance reports, in addition to other

obligations. 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, arts. XV–XVI, at 26–36; 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, arts. XV–XVI, at 27–37. As relevant here, "[a] monthly report on a form prepared by the Trustees shall be remitted by each Employer not later than the fifteenth (15th) day of the following month." 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, art. XV, § 4, at 27; 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, art. XV, § 4, at 28. The CBAs further provide that failure to make weekly contributions to the fund renders an employer in delinquency and the employer is obligated to make its books and records, including the specified remittance reports, available for inspection and audit. 2015–2019 CBA, Ex. A to Argila Aff., ECF 88-1, art. XV, § 7, at 27–31; 2019–2023 CBA, Ex. B to Argila Aff., ECF 88-2, art. XV, § 7, at 28–32.

As discussed above, there is no dispute that the Kobgo audit reports reflected a net delinquency of $21,737.22 for the '16–'19 Audit Period and $4,446.34 for the '19–'23 Audit Period, and that the delinquency for the '16–'19 Audit Period was paid in full. Defs. Counter-56.1, ECF 94, ¶¶ 52–53. The parties also agree that "[a]ll contributions claimed due by Plaintiffs under the Second Amended Complaint have been paid in full." Defs. 56.1, ECF 94-2, ¶ 40 (citing Raja Affirmation, ECF 94-3, ¶¶ 24, 35); Pls. Counter-56.1, ECF 93-1, ¶ 40. While Defendants contend that Defendant "S&N submitted monthly remittance reports to Plaintiffs setting forth the Local No. 1 employee hours worked and the contributions payable pursuant to the PLA," Defendants supply no underlying evidence to support these assertions. Defs. Counter-56.1, ECF 94, ¶ 56; Defs. 56.1, ECF 94-2, ¶ 16 (citing Raja Affirmation, ECF 94-3, ¶ 14; Ex. B to Raja Affirmation, ECF 94-5).

Accordingly, there is no dispute of fact on the question of whether Defendant S&N breached the PLA and the CBA through its failure to timely submit all the

required remittance reports, contributions, dues, and other payments due under the CBAs.

**C. Defenses**

As a defense to liability, Defendants assert that Plaintiffs' failure to mitigate damages constitutes a waiver of their right to recover. Defs. Mem., ECF 94-7, at 9–16. More specifically, Defendants offer three bases upon which they argue that Plaintiffs failed to mitigate their alleged damages: (1) Plaintiffs failed to employ the remedies afforded under the PLA; (2) Plaintiffs failed to utilize the remedies afforded under the payment bonds; and (3) Plaintiffs failed to follow their own collection procedures. *Id.*; Defs. Reply, ECF 94-8, at 3–8. Plaintiffs deny that Defendants' waiver defense is applicable in this case and assert that even if it did apply, it fails. Pls. Opp'n, ECF 93, at 11–20.

As established by the Federal Rules of Civil Procedure, waiver is an affirmative defense. Fed. R. Civ. P. 8(c)(1); *see Trs. of New York City Dist. Council of Carpenters Pension Fund v. Halcyon Constr. Corp.* ("*Halcyon Constr.*"), No. 15-CV-1191 (PGG), 2017 WL 5643603, at *9 (S.D.N.Y. Mar. 31, 2017). "Given that waiver turns on questions of intent, it is generally not susceptible to summary judgment." *Halcyon Constr.*, 2017 WL 5643603, at *9 (collecting cases). In order to survive summary judgment, the party asserting waiver "must produce 'evidence of an intentional relinquishment of a known right.'" *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 303 (2d Cir. 1996) (quoting *Hayes v. Crane Hogan Structural Sys.*, 594 N.Y.S.2d 923, 925 (App. Div. 4th Dep't 1993)). "'Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right.'" *Halcyon Constr.*, 2017 WL 5643603, at *9 (quoting *Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 499 (S.D.N.Y. 2007)).

At the outset, however, the "Second Circuit has recognized that an employer's affirmative defenses in a Section 515 ERISA action are limited." *Mason Tenders Dist. Council Welfare Fund v. Blade Contracting, Inc.*, No. 22-CV-9609 (JGLC), 2025 WL 936571, at *11 (S.D.N.Y. Mar. 27, 2025) (citing *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) ("Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable).")). "Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Benson*, 907 F.2d at 314; *see Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 466 (S.D.N.Y. 2021).

Here, Defendants have not attempted to argue the CBAs are void, nor have they attempted to argue that the contributions are illegal. Accordingly, Defendants have not substantiated any affirmative defense to bar application of ERISA.

Even assuming, *arguendo*, that Defendants could raise a waiver defense based on the assertion that Plaintiffs failed to mitigate their damages, this argument fails because Defendants have not illustrated that Plaintiffs were on notice of the delinquencies prior to the audits. *See Halcyon Constr.*, 2017 WL 5643603, at *9 (rejecting waiver defense because "there is no evidence that [the plaintiffs] knew — prior to the Second Audit — that [the defendant] had been delinquent in making the required contributions"). While Defendants assert, in a conclusory fashion, that "S&N submitted weekly certified payrolls along with its monthly payment requisitions to NYCHA," Defendants do not proffer any evidence to support this claim. Defs. Mem., ECF 94-7, at 12; *see also* Pls.

Counter-56.1, ECF 93-1, ¶¶ 11, 15 (specifying that the certified payroll reports and payment requisitions to NYCHA in the record constitute only a sample of these records). Without evidence in the record to support Defendants' contentions, Defendants' argument that Plaintiffs sat on their rights and failed to adequately mitigate their damages is unavailing. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks omitted)).[14] Accordingly, Defendants' proposed defenses are unpersuasive and fail on summary judgment.

**III. Damages**

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v. Colony Elec. Co.* ("*Colony Elec.*"), No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). Section 502, which was codified at 29 U.S.C. § 1132(g)(2), provides as follows:

---

[14] Defendants' supplemental letter claims that "it is clear that Federal Courts in New York will not preclude a defendant from pursuing a mitigation of damages defense because the case involves ERISA claims." Defs. Letter, ECF 98, at ECF p. 3. However, the case in this circuit that Defendants quote acknowledges that "'the issue is not settled.'" *Id.* (quoting *Iron Workers Loc. 12 Pension Fund by Eggleston v. Standard Steel Fabricators, Inc.* ("*Standard Steel*"), No. 1:16-CV-0625 (GTS/CFH), 2018 WL 4554493, at *10 (N.D.N.Y. Sept. 21, 2018)). Moreover, the court in *Standard Steel* noted that "to the extent the doctrine of mitigation applies in the ERISA context, it would apply at most to the determination of damages, and not to liability" and determined that "[n]either party ha[d] discussed and analyzed the facts, or lack thereof, supporting this defense," rendering it impossible for the court to analyze the defense. *Standard Steel*, 2018 WL 4554493, at *10–11 (quotation marks omitted). Here, however, as established above, there is ample case law in the Second Circuit supporting the determination that Defendants have not raised an accepted defense under ERISA, the defenses were adequately briefed, and Defendants' arguments are unpersuasive against the backdrop of the summary judgment record.

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of —
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Colony Elec.*, 2010 WL 5665042, at *4.

The Court further notes that while ERISA does not allow for recovery based on contributions that were paid prior to the initiation of the suit, "a plaintiff may recover interest on late contributions under a breach-of-contract theory pursuant to the LMRA." *Bd. of Trs. of the United Union of Roofers, Waterproofers & Allied Workers Loc. Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.* ("*Akro Gen. Contracting*"), No. 15-CV-4901 (CBA) (VMS), 2016 WL 6775467, at *6 (E.D.N.Y. Aug. 15, 2016) (collecting cases), *report and recommendation adopted sub nom. Bd. of Trs. of the United Union of Roofers v. Akro Gen. Contracting, Inc.*, 2016 WL 6779487 (E.D.N.Y. Nov. 15, 2016). It is undisputed that Defendants submitted a number of checks to address the alleged delinquencies prior to the filing of this suit on June 6, 2022. *See, e.g.*, Defs. Counter-56.1, ECF 94, ¶ 25 (admitting that Defendant S&N submitted a number of checks in 2021). Nevertheless, because Plaintiffs have also sued for breaches of the CBAs, Plaintiffs may recover

interest on late payments under those contracts. *See Akro Gen. Contracting*, 2016 WL 6775467, at *6.

Here, "Plaintiffs seek judgment in the total amount of $915,237.43,"[15] which consists of: (1) "remaining delinquent contributions and dues per the 11/11/25 Revised Audit in the amount of $4,446.33"; (2) "ten percent (10%) interest on all delinquent contributions per the 7/10/25 and 11/11/25 Revised Audits in the total amount of $321,121.51"; (3) "nine percent (9%) interest on all delinquent dues and assessments per the 7/10/25 and 11/11/25 Revised Audits in the total amount of $23,009.67"; (4) "additional interest on ERISA contributions for the 7/10/25 and 11/11/25 Revised Audits in the total amount of $321,121.51"; (5) "audit costs in the amount of $35,120.00"; (6) "attorney's fees in the amount of $209,639.50"; and (7) "costs and expenses in the amount of $778.91, in accordance with ERISA." Pls. Mem., ECF 91, at 25. However, this requested relief appears to be out of date given the parties' agreement that all of the delinquent contributions have been paid. *See* Defs. 56.1, ECF 94-2, ¶ 40; Pls. Counter-56.1, ECF 93-1, ¶ 40; Hr'g Tr., ECF 97, at 3:3–4:2.

Notwithstanding the above determinations on liability, the Court finds that it cannot award damages at this time on the basis of the present record. First, if Defendant Raja is found to be a fiduciary, the Defendants here may be jointly and severally liable for unpaid contributions, pre-judgment interest, and attorney's fees and costs. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 190 (2d Cir. 2015) (no fiduciary liability for liquidated damages); *Loc. 1992 Pension Fund v. A-G Elec. Supply Co. Inc.*, No. 21-CV-3441 (JMA)

---

[15] The Court notes that, by the Court's calculation, Plaintiffs' requested damages as enumerated amount to $915,237.23, rather than $915,237.43.

(JMW), 2024 WL 872467, at *6–7 (E.D.N.Y. Feb. 6, 2024) (damages and attorney's fees and costs) (collecting cases), *report and recommendation adopted*, 2024 WL 866235 (E.D.N.Y. Feb. 28, 2024); *Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. LG Elite Plumbing, Inc.*, No. 25-CV-2234 (PKC) (RML), 2026 WL 884495, at *11 (E.D.N.Y. Mar. 6, 2026) (attorney's fees), *report and recommendation adopted*, 2026 WL 881364 (E.D.N.Y. Mar. 31, 2026). Accordingly, the Court finds it inappropriate to attempt to calculate and award damages until the outstanding question of Defendant Raja's fiduciary status is addressed to avoid conflicting judgments. *Cf. Badalamenti v. Country Imported Car Corp.*, No. 10-CV-4993 (SJF) (GRB), 2012 WL 601481, at *2 (E.D.N.Y. Feb. 22, 2012) (in the ERISA default context, deferring the determination of damages due to outstanding "defendants against whom plaintiff alleges joint and several liability based upon the breach of their respective fiduciary duties") (collecting cases).

Moreover, the Court observes that "where the movant 'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 160 (1970)). This is because it is the movant's burden to establish all critical elements of the case. *See Adickes*, 398 U.S. at 158 ("Given these unexplained gaps in the materials submitted by [movant], we conclude that [movant] failed to fulfill its initial burden of demonstrating . . . a critical element in this aspect of the case . . . ."). In other words, "the court may grant summary judgment only if the motion and supporting materials . . . show that the movant is entitled to it"; "[c]onsidering some facts undisputed does not of itself allow summary judgment." Fed. R. Civ. P. 56(e)(3) advisory committee's note to 2010 amendment.

Here, Plaintiffs have failed to meet their burden on summary judgment to establish damages with clarity. As set forth above, ERISA does not allow for recovery based on contributions that were paid prior to the initiation of the suit but "a plaintiff may recover interest on late contributions under a breach-of-contract theory pursuant to the LMRA." *Akro Gen. Contracting, Inc.*, 2016 WL 6775467, at *6. As established in the parties' papers, the record, and Plaintiffs' damages calculations spreadsheets, Defendant S&N submitted a number of checks to address the alleged delinquencies prior to the filing of this lawsuit on June 6, 2022. *See, e.g.*, Defs. Counter-56.1, ECF 94, ¶ 25; Exs. L–N to Argila Aff., ECF 88-12, 88-13, 88-14; Ex. II to Morgan Decl., ECF 90. While Plaintiffs' damages spreadsheets appear to deduct payments made prior to suit to a certain extent, the Court is unable to discern whether such payments are adequately excluded from Plaintiffs' requested damages calculations.[16] Moreover, Plaintiffs' damages calculations do not account for the impact of Defendants' final payment to address the $4,446.33 outstanding delinquency for the '19–'23 Audit Period, which payment appears to have been made after Plaintiffs' summary judgment motion was served. *See* Hr'g Tr., ECF 97, at 3:3–4:2 (Plaintiffs' counsel confirming at the oral argument that "there are no contributions due and owing" because after Plaintiffs

[16] For example, in Exhibit II to the Morgan Declaration regarding Plaintiffs' calculations as to the July 10, 2025 revised audit for the '16–'19 Audit Period, it appears that Plaintiffs attempted to indicate periods with pre-suit payments in red. *See generally* Ex. II to Morgan Decl., ECF 90-3. However, the Court notes that, for the PCC Funds ERISA Contributions, the "Nov-16" period with a "Date of Pay" of "02/03/25" is noted in red, even though the date of payment falls after the filing of this suit on June 6, 2022. *Id.* at ECF p. 2. Likewise, it appears that the International Contributions may fall within the category of ERISA damages as well; however, similarly the "Nov-16" period is notated in red although the date of payment indicates a payment provided post-suit. *Id.* at ECF p. 3. Moreover, for the International Contributions, the "Jan-16" and "Feb-16" periods both include a date of pay prior to the filing of the suit ("03/17/21," for both periods), but it is not clear, due to the lack of red font, whether these periods have been omitted from the ultimate calculation. *Id.*

"served their affirmative motion . . . within a day or two S&N did submit a check in payment" for the outstanding delinquency).

The Court further notes that Plaintiffs' motion does not make clear which damages are being sought pursuant to ERISA and which are being sought as a result of the breaches to the CBAs, and which damages are therefore potentially attributable to each Defendant. *See generally* Pls. Mem., ECF 91; *see* Hr'g Tr., ECF 97, at 35:10–11, 35:14–25 (explaining that Plaintiffs separate damages into "three buckets . . . ERISA contributions, non-ERISA contributions, and dues and assessments"), 36:7–11 (noting that "the dues and assessments which are [due] to the union . . . would be under the LMRA"), 36:13–17 (adding that "the whole claim can be decided under ERISA even for the dues and assessments because they were due and owing in accordance with the CBA and the plan documents"). *Cf. generally* Morgan Decl., ECF 90 (providing explanations regarding Plaintiffs' damages calculations); *Akro Gen. Contracting*, 2016 WL 6775467, at *6 (noting that while ERISA does not allow for recovery based on contributions that were paid prior to the initiation of the suit, "a plaintiff may recover interest on late contributions under a breach-of-contract theory pursuant to the LMRA"). As set forth above, Plaintiffs only contend that Defendant Raja is an ERISA fiduciary and do not establish whether Defendant Raja is liable for any damages sought under a breach of contract theory pursuant to the LMRA rather than ERISA. *See generally* Pls. Mem., ECF 91; *see also supra* note 10.

The Court is not persuaded that Plaintiffs have met their burden to establish the requested damages. *See Adickes*, 398 U.S. at 158. Accordingly, for all of these reasons, the Court finds that Plaintiffs have failed to establish their entitlement to damages at this time and denies Plaintiffs' motion for summary judgment as to damages, attorney's fees, and costs.

## CONCLUSION

Plaintiffs' motion for summary judgment is granted in part and denied in part, and Defendants' motion for summary judgment is denied. Due to outstanding disputes of material fact as to whether Defendant Raja is a fiduciary under ERISA, both parties' motions for summary judgment on that issue are denied. Accordingly, Plaintiffs have established their entitlement to summary judgment on liability under ERISA and based on breaches of the CBAs against Defendant S&N Builders only. The questions of damages and Defendant Raja's individual liability are reserved for trial.

**SO ORDERED.**

Dated: Brooklyn, New York
October 8, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE